114 P.3d 974

Carla MAROUN, as Executrix of the
Estate of Tony Y. Maroun,
Plaintiff–Appellant,

v.

WYRELESS SYSTEMS, INC., a Delaware
corporation, Bradley C. Robinson, an in-
dividual, Christopher Tucker, an Indi-
vidual, and TKL, LC, a Utah Limited
Liability Company, Defendants–Respon-
dents.

Carla Maroun, as Executrix of the
Estate of Tony Y. Maroun,
Plaintiff–Appellant,

v.

Bradley C. Robinson, an individual; Deno
G. Skouras, an individual; Paul Evans,
an individual; Christopher Dunhill, an
individual; and Jean Marie Rousseau,
an individual, Defendants–Respondents.

Nos. 30407, 30835.

Supreme Court of Idaho,
Boise, February 2005 Term.

May 3, 2005.

Meuleman & Miller, LLP, Boise, for appellant. Jeffrey R. Sykes argued.

Hepworth, Lezamiz & Janis, CHTD, Boise, and Anderson & Karrenberg, Salt Lake City, Utah, for respondents. Nathan B. Wilcox argued.

TROUT, Justice.

Carla Maroun, as Executrix of the Estate of Tony Y. Maroun, appeals several orders entered in favor of Wyreless Systems, Inc., (Wyreless or WSI) and various officers and alleged shareholders of Wyreless arising out of an employment agreement and a shareholder liability action.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Tony Y. Maroun (Maroun) was employed by Amkor when he accepted an offer to work for Wyreless, a start-up company. On November 20, 2000, a letter was sent from Bradley C. Robinson, president of Wyreless, to Maroun setting forth the terms of their employment agreement. The pertinent portions of the letter were as follows:

I would like to put forward for discussion and/or your acceptance a general outline of the terms of employment you and I have discussed if you chose to join our team. I have discussed the proposed terms with the Board of Directors of WSI and key shareholders and they are in agreement with the proposed terms you and I have discussed.

- Annual salary of $300,000.
- $300,000 bonus for successful organization of Wyreless Systems, Inc.
- 15% of the issued equity in Wyreless Systems, Inc.
 - ○ The equity and "organization bonus" will need to be tied to agreeable milestones (e.g., acquisition of Matricus, organization of management team, etc).
- Full medical benefits.
- Position of Chief Executive Officer, President and a position on the Board.
- Bonuses and incentives will need to be determined by the Board and you after the business plan has been agreed by all parties.

. . .

I would like you to have an understanding of the fund raising status. I was able to get a commitment from two investors today for a minimum of $250,000 for arrival into the WSI bank account early next week. I believe we will be able to raise an additional $350,000 during the following week. I am processing the required paper work as fast as possible and expect the paperwork to allow for legal receipt of the investment funds in WSI to be available by Wednesday of the coming week.

The funds being raised will be deposited into an account to cover the salaries and operating expenses related only to yourself and Jen Gadelman (sic). If we are not successful in raising the required capital for the business the funds remaining in the account on May 1, 2001 will be release[d] to you and Jen Gadelman (sic) as compensation beyond salaries and expenses for your efforts in developing the business.

I anticipate a starting date of employment of December 1, 2000 or as soon you (sic) can reasonably and professional (sic) resolve your responsibilities with Amkor.

Thereafter, Maroun started working for Wyreless but his employment was terminated in February 2001. Maroun then filed suit (the Wyreless suit), alleging he had not received two salary payments totaling $23,077, had not received 15% of issued equity and had not received the remainder of the $600,000 in bank account funds, alleged to be a balance of $429,145. His complaint characterized the claim as a "wage claim" and sought treble damages under I.C. § 45–615(2). Maroun also claimed Wyreless' corporate shell should be set aside and the shareholders of Wyreless should be jointly and severally liable for any damages Wyreless caused to him. The alleged shareholders included Robinson, Christopher Tucker, Deno G. Skouras, Jean Marie Rousseau and Christopher Dunhill. Finally, Maroun brought a claim of fraud against Robinson for inducing him to accept employment with Wyreless. After Maroun filed a motion for partial summary judgment against Wyreless on the basis that there was no dispute Maroun was owed $23,077 in unpaid wages, the parties stipulated to entry of a judgment in favor of Maroun in the amount of $23,077.

Subsequent to filing the original complaint, Maroun voluntarily dismissed Tucker, Skouras, Rousseau and Dunhill without prejudice as a result of an affidavit filed by Skouras indicating that TKL, LC (TKL) was the sole shareholder of Wyreless. Over the course of the litigation, Maroun made various attempts to amend the complaint to try and bring those parties back into the litigation, most of which were not successful. Ultimately, Maroun continued the suit with a fraud claim against Robinson and a shareholder liability claim against Tucker and TKL.

In the fall of 2002, Tony Y. Maroun died unexpectedly and his wife continued the lawsuit, acting as executrix of his estate. Wyreless filed a motion for summary judgment on the remaining portions of Maroun's wage claim, which included the claim for 15% of Wyreless shares and the alleged $429,145 balance of the Wyreless fund account. The district court granted the motion. The fraud claim against Robinson was dismissed on summary judgment and the shareholder liability claim against Tucker and TKL was tried to a jury. The special verdict form submitted to the jury states:

(1) Was Defendant Christopher Tucker a shareholder of Wyreless?

(2) Was Wyreless the alter ego of Defendant Christopher Tucker?

(3) Was Wyreless the alter ego of Defendant TKL, LC?

(4) Would failure to disregard the corporation and hold the shareholder(s) liable result in an injustice?

The jury answered "yes" to the first three questions and "no" to the fourth question. The district court then entered a judgment dismissing the claims against Tucker and TKL with prejudice. Maroun filed a motion for judgment notwithstanding the verdict and the district court denied the motion. Maroun appealed.

While the Wyreless suit was progressing and after the district court refused to allow Maroun to amend the complaint to add Robinson, Skouras, Evans, Dunhill and Rousseau as defendants for the shareholder liability claim, Maroun filed a separate lawsuit against Robinson, Skouras, Evans, Dunhill and Rousseau (the Robinson suit). This suit was assigned to the Honorable Deborah Bail. The defendants moved for summary judgment, arguing Maroun's claims were barred by the doctrine of collateral estoppel. The district court granted the motion dismissing the Robinson suit and Maroun appealed. This Court entered an order consolidating both appeals for purposes of oral argument and opinion.

## II.

## ANALYSIS

### A. Motion to Treble the Stipulated Judgment

Maroun argues on appeal that because judgment was entered for past due unpaid wages, that judgment should have been trebled pursuant to I.C. § 45–615(2). The answer lies in how we characterize the stipulation entered into between the parties which provided for entry of judgment on the wage claim because Maroun and Wyreless disagree on whether their stipulation precluded an award of treble damages. The statute provides that in an action to collect unpaid wages:

Any judgment rendered by a court of competent jurisdiction for the plaintiff in a suit filed pursuant to this section may include all costs and attorney's fees reasonably incurred in connection with the proceedings and the plaintiff shall be entitled to recover from the defendant either the unpaid wages plus the penalties provided for in section 45–607, Idaho Code; or damages in the amount of three (3) times the unpaid wages found due and owing, whichever is greater.

I.C. § 45–615(2). The stipulation of the parties provides:

Tony Y. Maroun, by and through his counsel of record, Meuleman & Miller, LLP, and Wyreless Systems, Inc., a Delaware corporation, by and through its counsel of record, Anderson & Karrenberg, hereby stipulate to the entry of a judgment for Tony Y. Maroun and against Wyreless Systems, Inc., a Delaware corporation, in the amount of $23,077.

The stipulated judgment entered by the district court states:

> Based upon the stipulation between Plaintiff Tony Y. Maroun and Wyreless Systems, Inc., judgment is hereby entered for Tony Y. Maroun and against Wyreless Systems, Inc. in the amount of $23,077.

After the stipulated judgment was entered, Maroun filed a motion seeking to triple the stipulated amount. The district court denied Maroun's request for treble damages, holding "the parties stipulated to the entry of judgment on the wage claim in the amount of $23,077.00. They did not stipulate only that the amount of the wage claim was [$23,-077.00]." Maroun immediately filed a "motion to clarify memorandum decision and order or, alternatively, to set aside the stipulated judgment" and requested the district court modify or set aside the stipulated judgment. After entering several additional orders, the district court held the stipulation precluded an award of treble damages, but did not affect the other amounts Maroun claimed were due pursuant to his employment letter.

■ A stipulation is a contract and its enforceability is determined by contract principles. *Olson v. Idaho Dept. of Water Resources*, 105 Idaho 98, 100, 666 P.2d 188, 190 (1983). The determination and legal effect of a contractual provision is a question of law. *Elliott v. Darwin Neibaur Farms*, 138 Idaho 774, 779, 69 P.3d 1035, 1040 (2003). "Determining the meaning of a statute and its application is a matter of law over which this Court exercises free review." *Polk v. Larrabee*, 135 Idaho 303, 308, 17 P.3d 247, 252 (2000) (quoting *J.R. Simplot Co. v. Western Heritage Ins. Co.*, 132 Idaho 582, 584, 977 P.2d 196, 198 (1999)). A mistake may justify grounds for relief if it is so substantial and fundamental that it defeats the object of the parties and does not accurately represent the agreement of both parties. *Belk v. Martin*, 136 Idaho 652, 657, 39 P.3d 592, 597 (2001).

■ The district court erred by not trebling the $23,077 stipulated judgment. The stipulation addressed the unpaid wages for the specified pay periods as alleged in the complaint; it did not constitute an agreement on treble damages. The amount pled as unpaid wages in Maroun's complaint is exactly the same amount in the stipulated judgment. Furthermore, a letter from Wyreless' attorney indicates the stipulation was for the payment of wages upon separation of employment and that "Wyreless does not dispute that it did not pay Mr. Maroun the amount of $23,077 upon his termination or following his demand for payment of alleged unpaid compensation." Idaho Code Section 45–615(2) "requires that treble damages be awarded whenever unpaid wages are found to be due and owing...." *Goff v. H.J.H. Co.*, 95 Idaho 837, 840, 521 P.2d 661, 664 (1974) (interpreting an earlier version of I.C. § 45–615(2)). The purpose of the Idaho wage claim statute is to "compensate terminated employees as soon as possible." *Kalac v. Canyon County*, 119 Idaho 650, 652, 809 P.2d 511, 513 (Ct.App.1991).

> [A]lthough the award of treble damages does tend to penalize the employer, it also serves to fully compensate the wage earning employee for the injury caused him by the delay he experiences in recovering his withheld wage in a court of law and the expenses connected with the recovery.

*Goff v. H.J.H. Co.*, 95 Idaho 837, 839–840, 521 P.2d 661, 663–664 (1974). Maroun incurred the expense of instituting a lawsuit to recover his unpaid salary and that is the harm treble damages were intended to deter. Because both parties concede that Wyreless owes $23,077 of unpaid wages, Maroun is entitled to treble damages on that amount and the district court erred in not trebling the judgment. This matter is remanded to the district court to enter a judgment that includes treble damages pursuant to I.C. § 45–615(2).

**B. Motions to Amend the Complaint**

During the course of this litigation, Maroun attempted on several occasions to amend the complaint to add allegations against Robinson or against alleged shareholders. Maroun argues the district court erred in not allowing those amendments. In denying the motions to amend the complaint, the district court found that in the absence of any evidence that Robinson, Skouras, Rousseau, Dunhill or Evans were actually shareholders, the proposed amendments did not state a

claim and any amendment would be futile. The district court also held the motions to amend were not timely.

The denial of a motion to amend a complaint after a responsive pleading has been served is governed by an abuse of discretion standard of review. *Hines v. Hines*, 129 Idaho 847, 853, 934 P.2d 20, 26 (1997); *Raedlein v. Boise Cascade Corp.*, 129 Idaho 627, 631, 931 P.2d 621, 625 (1996).

> The test for determining whether the district court abused its discretion is: (1) whether the court correctly perceived that the issue was one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether it reached its decision by an exercise of reason.

*Thomas v. Medical Center Physicians, P.A.*, 138 Idaho 200, 210, 61 P.3d 557, 567 (2002) (citations omitted). As to the first requirement, "the grant or denial of an opportunity to amend is within the discretion of the [d]istrict [c]ourt. . . ." *Idaho Schools for Equal Educational Opportunity v. Idaho State Board of Education*, 128 Idaho 276, 284, 912 P.2d 644, 652 (1996) (citations omitted). The district judge in this case expressly stated her ruling on the motion was one of discretion.

As to the second requirement, "[i]n determining whether an amended complaint should be allowed, where leave of court is required under Rule 15(a), the court may consider whether the new claims proposed to be inserted into the action by the amended complaint state a valid claim." *Black Canyon Racquetball Club, Inc., v. Idaho First Nat'l Bank N.A.*, 119 Idaho 171, 175, 804 P.2d 900, 904 (1991) (citations omitted). However, the trial court may not consider the sufficiency of evidence supporting the claim sought to be added in determining leave to amend because that is more properly determined at the summary judgment stage. *Thomas*, 138 Idaho at 210, 61 P.3d at 567. It was certainly proper for the district court to consider whether the proposed amended complaint alleged valid claims. However, it was not proper for the district court to require Maroun to produce evidence showing Robinson, Skouras, Rousseau, Dunhill and Evans were shareholders or owners of Wyreless before permitting the complaint to be amended. Therefore, the amendment should not have been denied on that basis.

The district court's alternative basis for denying Maroun's motions to amend was because they were untimely. This Court has held the following factors are controlling when a district court considers the timeliness of a motion for leave to amend a complaint:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given.

*Carl H. Christensen Family Trust v. Christensen*, 133 Idaho 866, 871, 993 P.2d 1197, 1202 (1999) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 225 (1962)) (internal citation omitted). In *Christensen*, the parties stipulated to allow motions through October 3, a week before the stipulated hearing date. The plaintiffs filed a motion to amend their complaint on October 1. The district court denied the motion on timeliness grounds, stating "the amended complaint was not lodged with this [c]ourt until October of 1997, nearly one year after the filing of the original complaint. It was not timely filed, and it will not be accepted or considered by this [c]ourt." *Christensen*, 133 Idaho at 871, 993 P.2d at 1202. On appeal, this Court held the district court abused its discretion in denying the plaintiffs' motion to amend because the correct legal standard for timeliness was not applied. The holding was based on the fact that the district court "did not consider whether the amendment would cause delay or would prejudice the defendants." *Christensen*, 133 Idaho at 873, 993 P.2d at 1203.

In this case, the district court entered a scheduling order that set a deadline for filing motions to amend pleadings. The parties later stipulated to amend the scheduling or-

der to extend the time for filing motions to amend pleadings to April 30, 2002. Maroun filed his third motion to amend on August 28, 2002 and filed his fourth motion to amend on February 21, 2003. Unlike the situation in *Christensen,* where the deadline for filing motions had not yet expired, Maroun filed his motions to amend several months after the deadline and named defendants who Maroun had already voluntarily dismissed from the suit. In denying the motions, the district court discussed the fact that the motions were filed after the deadline for filing amended pleadings and after two discovery deadlines had passed. This district court also noted the passage of time. In response to one of the motions to amend, the district court stated: "We are now two years into this case, the time to amend pleadings has passed, and two discovery deadlines have expired. It is now simply too late to further amend the substance of the pleadings. . . ." It is clear from the judge's comments and from the record that an extended period of time had passed and Maroun had been repeatedly unsuccessful in alleging claims against the new defendants. In addition, the record reveals that Maroun was granted leave to amend his complaint on at least two prior occasions during the course of this litigation. The district court sufficiently articulated the prejudice to the defendants and did not abuse its discretion in denying the motions to amend.

## C. Motion to Strike

In March 2003, Robinson moved to strike the portion of Maroun's third amended complaint that alleged Robinson was a shareholder or owner of Wyreless. The district court granted the motion, noting the original complaint alleged that Robinson was a shareholder, but the first and second amended complaints deleted that allegation. When the third amended complaint was filed, it added the word "shareholder" as to Robinson, but nowhere in Maroun's briefing or affidavit in support of the third motion to amend did Maroun mention adding a shareholder liability claim against Robinson. "[E]arly case law has established in Idaho that a court may, in its discretion, permit an amended pleading to remain on file even

though it was filed without leave." *Southern Idaho Production Credit Ass'n v. Gneiting,* 109 Idaho 493, 494, 708 P.2d 898, 900 (1985) (citing *Lightner v. Russell and Pugh Lumber Co.,* 52 Idaho 616, 17 P.2d 349 (1932)). The matter is "entirely within the discretion of the [trial] court." *Lightner v. Russell and Pugh Lumber Co.,* 52 Idaho 616, 621, 17 P.2d 349, 350 (1932) (quoting *Kelly v. Leachman,* 3 Idaho 629, 633, 33 P. 44, 45 (1893)). .

"To warrant casting aside the legal fiction of distinct corporate existence . . . it must . . . be shown that there is such a unity of interest and ownership that the individuality of such corporation and such person has ceased; and it must further appear from the facts that the observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice." *Hayhurst v. Boyd,* 50 Idaho 752, 761, 300 P. 895, 897 (1931) (citations omitted). The complaint in this case had previously only alleged Robinson was a director and officer in Wyreless. Merely being a director or officer of a corporation is not sufficient to pierce the corporate veil. Thus, adding in the allegation that Robinson was a shareholder alleged an entirely new cause of action against Robinson for which Maroun had not obtained permission. In granting the motion to strike, the district court stated Maroun never actually received leave to add this claim against Robinson and there was no abuse of discretion in striking the allegation.

## D. Partial Summary Judgment on the Other Payment Claims

*Organizational Bonus*

"A cause of action not raised in a party's pleadings may not be considered on summary judgment nor may it be considered for the first time on appeal." *Edmondson v. Shearer Lumber Products,* 139 Idaho 172, 178, 75 P.3d 733, 739 (2003). In its April 13, 2003 memorandum decision and order, the district court stated:

> Maroun never mentioned the organization bonus in his pleadings or discovery responses during at least two years of litigation, which have included a vacated trial setting and several amended complaints.

Maroun's first mention of the organization bonus was in his opposition brief to [Wyreless'] current motion for summary judgment. . . . It would be prejudicial for Maroun to claim new damages at this point.

Because Maroun never included his claim for an organizational bonus in any pleadings, the district court did not err in refusing to consider it.

*15% of Issued Equity*

■■■■■ Maroun's compensation package included 15% of Wyreless' issued equity but the letter outlining the compensation package also stated the equity "will need to be tied to agreeable milestones (e.g., acquisition of Matricus, organization of management team, etc.)." "Where a contract is clear and unambiguous, the determination and legal effect of a contractual provision is a question of law to be decided by the court." *Terteling v. Payne*, 131 Idaho 389, 391, 957 P.2d 1387, 1389 (1998) (citing *Suchan v. Suchan*, 106 Idaho 654, 660, 682 P.2d 607, 613 (1984)). Interpretation of an ambiguous document presents a question of fact. *DeLancey v. DeLancey*, 110 Idaho 63, 65, 714 P.2d 32, 34 (1986). "The determination of whether a document is ambiguous is itself a question of law, which we resolve by examining the document's relevant provisions to determine whether the contract is reasonably subject to conflicting interpretations." *Terteling*, 131 Idaho at 392, 957 P.2d at 1390 (citations omitted).

■■■■■ Although it may be unclear what the "agreeable milestones" would be, the agreement in this case is not ambiguous as to when payments for equity would be considered. The provision requiring the equity be "tied to agreeable milestones" is merely an agreement to agree in the future on a condition precedent to any obligation to pay. "Generally, an agreement to agree is unenforceable, as its terms are so indefinite that it fails to show a mutual intent to create an enforceable obligation. . . . No enforceable contract comes into being when parties leave a material term for future negotiations, creating a mere agreement to agree." 17A AM. JUR.2D *Contracts* § 181 (2004). "A condition precedent is an event not certain to occur, but which must occur, before performance under a contract becomes due." *Steiner v. Ziegler–Tamura Ltd.*, 138 Idaho 238, 242, 61 P.3d 595, 599 (2002) (citing *World Wide Lease, Inc. v. Woodworth*, 111 Idaho 880, 887, 728 P.2d 769, 776 (Ct.App.1986)). The provision dealing with entitlement to 15% of issued equity is unenforceable because it is merely an agreement to agree on something which may never occur. The district court's grant of summary judgment with respect to the claim of issued equity is affirmed.

*Balance of Funds in Account*

■■■ Maroun argues the language in Robinson's letter regarding the funds being raised provided a right to $600,000 minus wages and operating expenses. Maroun also asserts evidence was presented to the district court to show money had been raised but not deposited into the account. Wyreless responds by arguing that it never made any representation as to the amount that would be remaining in the account on May 1, 2001.

The district court found the language was not ambiguous and held it gave Maroun and Gabelman (incorrectly shown as "Gadelman" in the letter) the right to funds in the account on May 1, 2001. Although there may be ambiguity as to the amount of money that would be remaining in the account on May 1, 2001, the language providing the right to that amount is not ambiguous. Contrary to Maroun's assertions, the language does not create an absolute right to $600,000. Robinson's representations are hedged and relate to future events. Robinson stated he had a "commitment" for the money, not that he had the money. In addition, he stated "I believe" we will be able to raise $350,000, not that he had actually done so.

On appeal, Maroun argues there is a genuine issue of material fact as to what happened to the money that was raised. The language of the letter states "[t]he funds being raised will be deposited into an account. . . ." There is no genuine issue as to whether the funds being raised were ever deposited into the account because the record clearly shows no funds were ever deposited. Maroun's complaint simply asserts an entitlement to the balance of the account on

May 1, 2001, and the district court ruled he was entitled to the $716.00 in the account on that date. Maroun's real argument is that Robinson breached the agreement by failing to place whatever money was raised into the specified bank account—but that is not the claim he brought against Wyreless or Robinson. Thus, the district court did not err in awarding Maroun only the money remaining in the account on May 1, 2001.

### E. Partial Summary Judgment as to Fraud

 Maroun argues the district court erred in granting summary judgment in favor of Robinson on the fraud claim. Fraud requires: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *Lindberg v. Roseth*, 137 Idaho 222, 226, 46 P.3d 518, 522 (2002). In opposition to the defendants' motion for summary judgment, Maroun filed an affidavit that stated Robinson made the following representations to Maroun:

(1) That Wyreless was to be a corporation of considerable size, with initial net revenues in excess of several hundred million dollars.

(2) That Robinson would soon acquire one and one-half million dollars in personal assets, which Robinson would make available to personally guaranty payment of my compensation from Wyreless.

(3) That he would have no difficulty in obtaining the initial investments required to capitalize Wyreless as a large, world leading corporation with initial net revenues in excess of several hundred million dollars.

(4) That he had obtained firm commitments from several investors and that investment funds would be received in Wyreless' bank account in the near future.

"An action for fraud or misrepresentation will not lie for statements of future events."

*Thomas v. Medical Center Physicians, P.A.*, 138 Idaho 200, 207, 61 P.3d 557, 564 (2002) (other citations omitted). "[T]here is a general rule in [the] law of deceit that a representation consisting of [a] promise or a statement as to a future event will not serve as [a] basis for fraud. . . ." *Sharp v. Idaho Inv. Corp.*, 95 Idaho 113, 122, 504 P.2d 386, 396 (1972) (other citations omitted). Statements numbered one and two both address future events. Robinson allegedly stated Wyreless "was to be" and that he "would soon acquire." "[T]he representation forming the basis of a claim for fraud must concern past or existing material facts." *Magic Lantern Prods, Inc. v. Dolsot*, 126 Idaho 805, 807, 892 P.2d 480, 482 (1995) (overruled on other grounds by *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 136 Idaho 466, 36 P.3d 218 (2001)). Neither of these statements constitutes a statement or a representation of past or existing fact. A "promise or statement that an act will be undertaken, however, is actionable, if it is proven that the speaker made the promise without intending to keep it." *Id.* (citing *First Sec. Bank of Idaho v. Webster*, 119 Idaho 262, 268, 805 P.2d 468, 474 (1991)). There is no indication in the record that Robinson did not intend to fulfill those representations to Maroun at the time he made the statements.

 "Opinions or predictions about the anticipated profitability of a business are usually not actionable as fraud." *Sharp*, 95 Idaho at 122, 504 P.2d at 395. Statement number three appears to be merely Robinson's opinion. As to statement number four, no evidence was submitted that Robinson had not received commitments at the time he made the statement to Maroun. Accordingly, the district court's grant of summary judgment against Maroun on the fraud claim is affirmed.

### F. Excluding Eric Larson Testimony

 At trial, Maroun sought to introduce testimony from Eric Larson, his supervisor at Amkor. The purpose of the testimony was to show what Maroun gave up by going to work for Wyreless. Larson was going to testify about Maroun's work at Amkor—his abilities, expertise, projects, salary and bene-

fits. Prior to Larson being called as a witness, Wyreless sought a ruling from the judge excluding the proposed testimony. The district court concluded the testimony was irrelevant because the question of what type of job Maroun left had nothing to do with the question of whether or not it would be unjust for him not to be able to pierce the corporate veil.

■■■ "Relevancy rulings of the trial court are questions of law that are given free review on appeal." *Opportunity, L.L.C. v. Ossewarde,* 136 Idaho 602, 609, 38 P.3d 1258, 1265 (2002). On appeal, Maroun argues Larson's testimony about what Maroun gave up to join Wyreless was relevant to the shareholder liability claim because it would aid the jury in deciding if not holding the shareholders liable would result in an injustice. "To warrant casting aside the legal fiction of distinct corporate existence ... it must ... be shown that there is such a unity of interest and ownership that the individuality of such corporation and such person has ceased; and it must further appear from the facts that the observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice." *Hayhurst v. Boyd,* 50 Idaho 752, 761, 300 P. 895, 897 (1931).

The "injustice" element of an alter ego claim relates to whether Maroun might have a judgment against a corporation and be unable to collect on that judgment because of the financial situation of the corporation and the informality of the corporate structure. The question of whether Maroun left a good job in order to join Wyreless has absolutely nothing to do with whether he can pierce the corporate veil. Therefore, the district court did not err in refusing to allow Larson to testify.

### G. Special Verdict for Tucker and TKL

■■■ Maroun argues the jury's responses to the special verdict should have resulted in a judgment in his favor. He asserts the jury's answers in the affirmative to questions one, two and three are inconsistent with the entry of judgment by the district court in favor of Tucker and TKL. "To make a special verdict consistent, a court must look at the evidence and the instructions given and see if there is a view of the case that makes the jury's answers consistent. If there is this consistent view, the court must resolve the case in that way." *Griffith v. Latham Motors, Inc.,* 128 Idaho 356, 360, 913 P.2d 572, 576 (1996) (citing *Lopez v. Langer,* 114 Idaho 873, 878, 761 P.2d 1225, 1230 (1988)). There are two elements that "warrant casting aside the legal fiction of distinct corporate existence"—there must be (1) such a unity of interest and ownership that the individuality of such corporation and such person has ceased and (2) it must further appear from the facts that the observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice. *Hayhurst,* 50 Idaho at 761, 300 P. at 897.

The special verdict questions address the two elements of a claim to set aside the legal fiction of a corporation. Special verdict questions two and three address element one—whether there was such a unity of interest and ownership that the individuality of Wyreless and Tucker or TKL had ceased. In answering "yes" to questions two and three, the jury was simply determining that there was a unity of interest and ownership between Tucker, TKL and Wyreless. Special verdict question four addresses element two—whether observance of the fiction of separate existence would, under the circumstances, promote injustice. By answering "no" to question number four, the jury determined that it would not be unjust to Maroun if he (or his estate) were not allowed to disregard the corporation and hold Tucker and TKL liable. In essence, the jury determined element one of an alter ego claim was met but not element two. This is consistent with the other jury instructions. Jury instruction number ten paraphrases the two elements from *Hayhurst, supra.* Jury instruction number eleven states in part:

A corporation is responsible for its own debts and obligations unless it is determined that the corporation is an "alter ego" of the owners of the corporation. If it is determined that the corporation is an "alter ego" of the individual shareholders, the individual shareholders may be held

liable for the amounts owed by the corporation if failure to do so would result in an injustice.

Although this instruction misstates the law (because if one finds the corporation is an alter ego one has necessarily already decided elements one and two are met), this instruction is consistent with the special verdict because it demonstrates how the jury could find the corporation to be the "alter ego" of Tucker and TKL but also find that the required level of injustice to hold them liable was not present. Therefore, the district court's judgment in favor of Tucker and TKL was consistent with the special verdict.

## H. Motion for Judgment Notwithstanding the Verdict

▮▮▮▮▮ Maroun argues his motion for judgment notwithstanding the verdict should have been granted because there was but one conclusion that could have been reached by reasonable minds and the jury did not reach that conclusion. "Motions for directed verdict or for judgment notwithstanding the verdict are properly denied when ... substantial competent evidence supports a jury's findings." *Griff, Inc. v. Curry Bean Co., Inc.*, 138 Idaho 315, 321, 63 P.3d 441, 447 (2003) (citations omitted). In this case, there is substantial, competent evidence that supports the jury's verdict that failure to hold Wyreless as the alter ego of Tucker and TKL would not result in an injustice. Robinson's letter informed Maroun of several risks he would take by joining Wyreless. It stated the project was just getting off the ground, the business would need to be developed, more funds needed to be raised, Wyreless was not yet organized and failure of the fund raising efforts was possible. A letter from Maroun to Jan Gabelman acknowledged that Maroun considered Wyreless as a start-up venture and that there was risk involved. Based on the evidence in the record, a reasonable person could conclude that there would be no injustice if Wyreless was not held to be the alter ego of Tucker and TKL. The district court's denial of Maroun's motion for judgment notwithstanding the verdict is affirmed.

## I. Attorney Fees

Maroun requests attorney fees and costs on appeal under I.C. § 45–615(2). That section provides in a suit to collect unpaid wages "[a]ny judgment rendered by a court of competent jurisdiction for the plaintiff in a suit filed pursuant to this section may include all costs and attorney's fees reasonably incurred in connection with the proceedings...." With respect to his claim for $23,077 of unpaid wages, Maroun is entitled to attorney fees incurred below and on appeal. This matter is remanded to the district court to determine a proper amount of fees incurred for the $23,077 unpaid wage claim, including amounts incurred on appeal. Maroun is not entitled to attorney fees for the remainder of the claims he has raised.

## J. Collateral Estoppel as to the Robinson Suit

▮▮▮▮▮ Maroun argues the district court in the Robinson suit erred in applying collateral estoppel to bar his claims because the issues decided by the district court in the Wyreless suit were not the same issues alleged in the Robinson suit. However, Maroun's amended complaint alleges the same claims for non-payment of wages and compensation and the same shareholder liability claim as alleged in the Wyreless suit. The only difference is the addition of Skouras, Evans, Dunhill and Rousseau as defendants, which Maroun had been unable to do in the Wyreless suit. "Whether collateral estoppel bars the relitigation of issues adjudicated in prior litigation between the same parties is a question of law upon which we exercise free review." *Rodriguez v. Dep't of Corr.*, 136 Idaho 90, 92, 29 P.3d 401, 403 (2001) (citations omitted).

▮▮▮▮ Collateral estoppel serves the purpose of protecting litigants from the burden of re-litigating an identical issue with the same party or his privy, of promoting judicial economy by preventing needless litigation, of preventing inconsistent decisions and of encouraging reliance on adjudications. *Anderson v. City of Pocatello*, 112 Idaho 176, 183, 731 P.2d 171, 178 (1986) (citations omitted). Collateral estoppel is also known as issue preclusion. *Eastern Idaho Agric.*

*Credit Ass'n v. Neibaur,* 133 Idaho 402, 407, 987 P.2d 314, 319 (1999). This Court requires five elements be evident in order to bar re-litigation of an issue determined in a prior proceeding:

> (1) The party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Rodriguez v. Dep't of Corr.,* 136 Idaho at 93, 29 P.3d at 404. In both the Wyreless suit and the Robinson suit, the fundamental issue is whether Maroun can pierce the corporate veil and hold the shareholders or owners of Wyreless liable for damages Maroun claims. Maroun received a full and fair opportunity to litigate this issue during the Wyreless suit. This issue was resolved against Maroun when the jury determined in the special verdict that failure to disregard the corporation and hold the shareholders liable would not result in an injustice. That verdict had a preclusive effect because it was a determination by a jury that Maroun was not entitled to pierce the corporate veil. The fact that he is now seeking to do the same against other purported shareholders is irrelevant; the verdict applies to Maroun's shareholder liability claim, not just the individual shareholders that were parties to the Wyreless suit. Therefore, the district court's dismissal of the Robinson suit based on collateral estoppel is affirmed.

## III.

## CONCLUSION

The district court erred by not trebling the $23,077 stipulated judgment. This matter is remanded to the district court to enter a judgment that includes treble damages pursuant to I.C. § 45–615(2) and to determine attorney fees below and on appeal that relate solely to the claim for $23,077 of unpaid wages. The remainder of the district courts' rulings in the Wyreless suit and the Robinson suit are affirmed. Given the result, we do not award costs to either party on appeal.

Chief Justice SCHROEDER, and Justices EISMANN, BURDICK and JONES concur.