138 P.3d 310

**Cathy and David ATWOOD, Elaine and Randy McGregor, Emmett and Ciana Munson, Kevin Weaver and Kim Lint, Plaintiffs,**

**and**

**Kimberly and Gary Ady, Shauna and Brandon Stallings, Plaintiffs–Respondents,**

v.

**Shelly and Joseph SMITH, individually, and dba Country Kids Daycare, Defendants–Appellants.**

No. 30214.

Supreme Court of Idaho, Boise, April 2006 Term.

May 25, 2006.

White Peterson, P.A., Nampa, for appellants. Christopher S. Nye argued.

Thompson Law Firm, Meridian, for respondents. Kristen Thompson argued.

JONES, Justice.

This is an appeal from the district court's orders which denied the Smiths' motion to amend, determined that the Smiths violated restrictive covenants by operating a daycare in their home, and granted an injunction requiring the cessation of the Smiths' daycare. We affirm in part and reverse in part.

## I.

Shelly and Joseph Smith entered into a purchase agreement on June 21, 2001, to acquire approximately 2.5 acres in a Nampa subdivision. The subdivision is zoned as rural residential. The Smiths' lot was the fourth and final lot in the subdivision. These lots are governed by covenants, conditions and restrictions (CCRs), which limit their use to residential purposes. The CCRs specifically prohibit the use of such lots for school or daycare centers. The CCRs may be amended by an instrument signed by 75% of the lot owners.

Around the time the Smiths signed the purchase agreement, they also sold their home in Boise, where Mrs. Smith had previously operated an in-home daycare. The Smiths testified that their intention was to relocate the daycare to their new home. When they signed the purchase agreement, the Smiths had actual knowledge of the CCRs and the daycare center prohibition. Consequently, the purchase was made contingent upon "approval from the county and health and welfare and neighbors of [their lot] for an in home 'daycare,' 75% of lot owners must agree to amend CCRs for [the subdivision]." The other three owners of the subdivision lots were Evanson and Jackie Baiya, respondents Kimberly and Gary Ady, and respondents Shauna and Brandon Stallings.

On June 30, 2001, the Smiths had an informal meeting with Mr. Ady, Mrs. Stallings, and the Baiyas.[1] The district court found that during this forty-five minute meeting, the Smiths spent a few minutes discussing their daycare plans. According to the testimony, the Smiths informed their neighbors

---

1. This meeting was not recorded and no formal minutes were taken.

that Mrs. Smith would care for 3 to 5 children.[2] No discussion occurred concerning the CCRs or any possible amendment of them. However, the Smiths asked whether the neighbors "would have a problem" with the in-home daycare. The testimony differs on the neighbors' responses. The Smiths and Mr. Baiya claim that those present stated that they had no problem with the daycare. Mr. Ady, however, asserts that he never agreed to the daycare and Mrs. Stalling claimed that she neither approved nor disapproved.

The record is silent as to whether the Smiths released or signed off on the contingency to their purchase agreement. However, they proceeded with the purchase, deeded the property to a builder for construction of a $287,000 custom home that included 700 square feet to be used for an in-home daycare, and then reacquired the lot with the completed home. The Smiths then advertised the opening of their daycare with a capacity of twelve children. In response, several neighbors, including the Respondents and the Baiyas, signed a petition objecting to the daycare and requesting a meeting with the Smiths. At this meeting (held on February 23, 2002), the Smiths told their neighbors that they intended to pursue a conditional use permit to operate their daycare. The Smiths closed on their home on February 27, 2002, and shortly thereafter they submitted a conditional use permit application to the Canyon County Development Services Department to operate a twelve-child in-home child daycare. During the June 2002 hearing, the Respondents testified in opposition to the daycare. The Canyon County hearing examiner approved the conditional use permit. The Respondents appealed this decision to the Canyon County Board of Commissioners, which resulted in the approval being reversed and the permit being denied.

Shortly after the permit hearing, the Respondents, along with some other neighbors, filed suit to enforce the CCRs and to enjoin the Smiths from operating their daycare. Subsequently, the Smiths filed motions for dismissal and summary judgment. The Respondents also filed for summary judgment. The district court entered partial summary judgment against the Smiths, finding the CCRs were clear and unambiguous and the Smiths violated the CCRs by conducting a daycare business. The district court stated that the only remaining issue was whether the Smiths, under the quasi-estoppel doctrine, reasonably relied on the oral statements made at the June 2001 meeting.

The Smiths then moved to amend their answer to add counterclaims for breach of oral contract, fraud, and promissory estoppel. This motion was denied. Subsequently, both the Smiths and the Respondents filed a motion for summary judgment regarding the issue of quasi-estoppel. In addition, the Smiths filed a second motion to amend their answer to add the counterclaims for breach of oral contract, promissory estoppel, and fraud. The district court once again denied the motion to amend. It also found that there was no genuine issue of material fact concerning any element of quasi-estoppel. Therefore, it granted both the Respondent's motion for summary judgment and the injunction enforcing the CCRs. This appeal followed.

## II.

When reviewing a summary judgment ruling, this Court utilizes the same standard as was used by the district court. *Foster v. Traul*, 141 Idaho 890, 892, 120 P.3d 278, 280 (2005) (citations omitted). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving part is entitled to a judgment as a matter of law." I.R.C.P. 56(c). If the non-moving party fails to provide a sufficient showing to establish the essential elements of his or her case, judgment shall be granted to the moving party. *Foster*, 141 Idaho at 892, 120 P.3d at 280 (citations omitted). "All disputed facts are to be construed liberally in favor of the non-moving party, and all rea-

---

**2.** Mr. Baiya testified that the Smiths discussed 3, 4, or 5 children, while Mr. Ady and Mrs. Stalling stated that 4 or 5 children were discussed. Mr. Smith testified that he had no recollection of whether the number of children was discussed.

sonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Sprinkler Irrigation Co. v. John Deere Ins.,* 139 Idaho 691, 695–96, 85 P.3d 667, 671–72 (2004).

## III.

■■■ The Smiths argue that the district court erred when it found that the Smiths violated the CCRs by operating their daycare. In support of this argument, the Smiths contend that the CCRs' language was ambiguous because it did not contain a definition of "daycare center." They are incorrect. The determination of whether a document is ambiguous is a question of law, over which we exercise free review. *Maroun v. Wyreless Sys., Inc.,* 141 Idaho 604, 614, 114 P.3d 974, 984 (2005) (citations omitted). In evaluating for ambiguity, this Court will examine the relevant portions of the document "to determine whether [it] is reasonably subject to conflicting interpretations." *Id.* (citations omitted).

■■■ In the current case, we are asked to determine whether or not the language in the CCRs prohibiting a daycare center is ambiguous. As explained above, in order to make such a determination, we must review language beyond this single provision (paragraph 8), which states that "No lot shall be used for school or daycare centers." While the Smiths are correct in their assertion that the term "daycare center" is not defined in the CCRs, a review of the remaining provisions makes it apparent that such a definition is not essential. The CCRs contain a broader prohibition that prevents the owners from operating a business on their property. Paragraph 1 states "No lot shall be used except for residential purposes." Further, the purpose of the CCRs is to "ensur[e] an attractive and desirable residential development." It is inherent from these provisions that the lots could only be used for residential purposes. The CCRs contain no exceptions to this policy. Consequently, regardless of the definition of "daycare center," the

CCRs clearly prohibit the lot owners from running a business on their lots. This proscription does not allow for conflicting interpretations. Therefore, it is unambiguous. As a result, the district court was correct in finding that the Smiths violated the CCRs by operating an in-home daycare.[3]

## IV.

■■■ The Smiths incorrectly assert that the district court erred in finding that they failed to illustrate a genuine issue of material fact regarding their quasi-estoppel claim. The doctrine of quasi-estoppel "prevents a party from asserting a right, to the detriment of another party, which is inconsistent with a position previously taken." *C & G, Inc. v. Canyon Highway Dist. No. 4,* 139 Idaho 140, 144, 75 P.3d 194, 198 (2003). This doctrine applies when: (1) the offending party took a different position than his or her original position and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in. *Id.* at 145, 75 P.3d at 199; *Thomas v. Arkoosh Produce, Inc.,* 137 Idaho 352, 357, 48 P.3d 1241, 1246 (2002). To prove quasi-estoppel, it is not necessary to show detrimental reliance; instead, there must be evidence that it would be unconscionable to permit the offending party to assert allegedly contrary positions. *Thomas,* 137 at 357, 48 P.3d at 1246.

■■■ In the current case, the district court found the Respondents did not take an inconsistent position because they never agreed to amend the CCRs and the Smiths were not disadvantaged by any possible general approval of their daycare. Consequently, the district court held no genuine issue of material fact existed. This was not error.

---

3. The Smiths also argue that the CCRs only prevent a daycare center from being built on the lots; they do not prevent a family from operating an in-home daycare center. This argument is

without merit. As explained, the CCRs prevent the use of the lots for all business purposes. This is true even if paragraph 8 was meant to prevent only the building of a daycare "center."

The Smiths failed to show a genuine issue of material fact regarding whether the Respondents changed their position. During the June 2001 meeting, the Smiths asked those present if they had a problem with an in-home daycare. According to the Smiths and Mr. Baiya, the Respondents stated they had no problem. However, Mr. Ady testified that he never agreed to the daycare and Mrs. Stallings claimed she neither approved nor disapproved of the daycare. As the district court explained, even viewing this evidence in the light most favorable to the Smiths, the Respondents, at most, gave a general approval of the Smiths' daycare. However, this general approval does not provide the Smiths with a valid quasi-estoppel claim. In order for the Smiths to operate an in-home daycare, it was necessary for the CCRs to be amended. Therefore, the proper focus for consideration of the quasi-estoppel claim is whether the Respondents agreed to an amendment, not whether they generally approved of the daycare. The Respondents never agreed to amend the CCRs. In fact, as the Smiths admitted, neither the CCRs nor an amendment were ever discussed by the parties. Because the Respondents never agreed to amend the CCRs, the Smiths do not have a valid quasi-estoppel claim.

## V.

■ Idaho R. Civ. P. 15(a) allows a party to amend a pleading after a responsive pleading has been filed when there is written consent of the adverse party or when there is leave from the court. As explained in this rule, the district court shall freely grant leave when justice requires. Idaho R. Civ. P. 15(a). In determining whether to grant such leave, the district court

> may consider whether the amended pleading sets out a valid claim, whether the opposing party would be prejudiced by any undue delay, or whether the opposing party has an available defense to the newly added claim. The court may not, however, weigh the sufficiency of the evidence related to the additional claim.

*Spur Products Corp. v. Stoel Rives LLP*, 142 Idaho 41, 122 P.3d 300, 303 (2005).

■ This Court will review the denial of a motion to amend for an abuse of discretion. *Maroun v. Wyreless Sys., Inc.*, 141 Idaho 604, 612, 114 P.3d 974, 982 (2005).

> The test for determining whether the district court abused its discretion is: (1) whether the court correctly perceived that the issue was one of discretion; (2) whether the court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether it reached its decision by an exercise of reason.

*Id.* (citations omitted).

■ In the current case, the Smiths filed a motion to amend their answer to add counterclaims for breach of oral contract, promissory estoppel, and fraud. This motion was twice denied by the district court. However, the district court's orders and the record are silent as to the reasoning for these decisions. The first order simply states that the amendment is denied and the only issue remaining is quasi-estoppel. The second order denied the motion without comment. As explained by the United States Supreme Court, "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely [an] abuse of that discretion." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962) (quoted by *Clark v. Olsen*, 110 Idaho 323, 326, 715 P.2d 993, 996 (1986)). Because the district court did not provide a reason for denial of the motions, we are unable to determine whether the district court acted within its boundaries of discretion or whether it reached its decision by an exercise of reason. Therefore, we reverse the district court's denial of the Smiths' motion to amend.

## VI.

We affirm both of the district court's decisions granting summary judgment. However, we reverse the district court's denial of the motion to amend and remand this issue for further proceedings consistent with this

opinion. Neither party is entitled to attorney fees.

Chief Justice SCHROEDER and Justices TROUT, EISMANN and BURDICK concur.

