**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 46323**

EAGLE SPRINGS HOMEOWNERS )
ASSOCIATION, INC., )
)           **Boise, August 2019 Term**
    **Plaintiff-Respondent,** )
)           **Opinion Filed: November 7, 2019**
**v.** )
)           **Karel A. Lehrman, Clerk**
**JAN RODINA,** )
)
    **Defendant-Appellant.** )

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Lynn G. Norton, District Judge.

The decision of the district court is affirmed.

Neal Colborn PLLC, Boise, for appellant. Gary Neal argued.

Vial Fotheringham LLP, Boise, for respondent. Christopher Tingey argued.

_____

BURDICK, Chief Justice.

This appeal involves a dispute between the Eagle Springs Homeowners' Association ("the HOA") and Jan Rodina, a homeowner in the HOA. After a dispute over a fence project, the HOA filed a complaint seeking injunctive relief in Ada County district court. Rodina asserted, among other defenses, that the HOA approved his project and waived the right to enforce certain provisions of the subdivision's Covenants, Conditions, and Restrictions ("CC&Rs"). The district court awarded summary judgment in favor of the HOA and granted injunctive relief. We affirm, finding that the HOA did not approve his project as built and that Rodina failed to show that a genuine issue of material fact precluded the award of summary judgment against him.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### The Eagle Springs Subdivision.

Located in Boise, Idaho, the Eagle Springs Subdivision consists of 230 residential lots and is governed by the CC&Rs. The CC&Rs are enforced and administered by the HOA through

1

a Board of Directors ("the Board"). The CC&Rs' purpose is to "protect, enhance and preserve the value, amenities, desirability, and attractiveness" of the subdivision.

Under the CC&Rs, homeowners must obtain approval from the HOA's "Architectural Committee" to "improve" the exterior of their property. The Architectural Committee is tasked with "us[ing] its judgment to see that all Improvements conform and harmonize as to external design, quality and type of construction, architectural character, materials, color, location . . . height, grade and finish ground elevation, natural conditions, landscaping and all other aesthetic considerations . . . ." An "Improvement" is broadly defined as "any structure, facility or system . . . which is erected, constructed or placed upon . . . any portion of the Property." The CC&Rs specifically list fences, walls, and landscaping within the definition of "Improvements". The CC&Rs provide precise requirements for specific alterations. For example: the Committee may only approve fences that are "in general conformance" with aesthetic models; fences and walls may not sit closer than 20 feet to any street; and no fence may exceed 6 feet in height.

To obtain the Committee's approval, a homeowner must fill out and submit a "Review and Approval Form". This form references the CC&Rs' guidelines and asks for "a detailed description" of the desired changes. Once submitted, the Committee reviews the application and will either approve, deny, or delay its decision on the application. Once a decision is reached, the Committee's decision is "conclusive and binding on all interested parties." The CC&Rs state that the Committee's prior approval does not waive its right to deny "any similar proposal" in the future.

In addition to approving and denying applications, the CC&Rs authorize the Architectural Committee to grant "variances from compliance with any of the architectural provisions of the Project Documents, including restrictions upon height, size, floor area or placement of structures, or similar restrictions, when circumstances such as topography, natural obstructions, hardship, aesthetic or environmental considerations may require." A variance excuses any violation for which it is granted. The CC&Rs specifically declare that granting a variance "shall not operate to waive any of the terms and provisions of the [CC&Rs] for any purpose except as to the particular Building Lot and particular provision hereof covered by the variance." The CC&Rs also provide that "[t]he failure to enforce any of the provisions herein at any time shall not constitute a waiver of the right to enforce any such provision."

2

<u>Rodina's Project.</u>

Rodina's property is a corner lot within the Eagle Creek subdivision located at the intersection of Big Springs Blvd. and N. Cayuse Way. Rodina's house faces north and meets Big Springs Blvd, a residential street running east to west. The east side of the property abuts the north-to-south N. Cayuse Way.

In May 2016, Rodina submitted a "Review and Approval Form" with the Architectural Committee (the "First Application"). Rodina described his project as follows:

> Fence Repair: Fence will be repaired and extended on the east side facing N. Cayuse Way to cover the full length of the house.

> Landscaping: In order to repair the fence and to level the fence with the house, some landscaping will be needed at the backyard and the east side of the house.

Nick Barber, the President of the HOA and member of the Architectural Committee, conditionally approved the application by writing "* - Fence to be stained to match – All repairs to be in compliance w[ith] CC&Rs <u>and</u> all applicable municipal, county, and state codes."

At the end of May 2016, Rodina began constructing a three-foot retaining wall "to level the severe slope of the parcel." Rodina also constructed a new fence, placing it atop the retaining wall, which placed it closer to N. Cayuse Way. In August 2016, the HOA asked Rodina to submit a second Review and Approval Form (the "Second Application"). Rodina did so, writing:

> As per our previously approved request by the HOA, we are planning to level the property by using retaining wall blocks. In addition, to avoid the continued trespassing, and to provide better privacy and security for our family, we are moving the fence on the east side slightly forward, closer to N Cayuse Way.

> All work will be done based on Ada county building codes. In addition, the construction site has already been visited and the plans were approved by the Sheriff that stopped by today.

After additional back and forth with Rodina to discern the full scope of the project, the Committee denied the second application and stated that the project, as built, violated the CC&Rs. The HOA communicated to Rodina its conclusions that: Rodina's project exceeded the scope of the First Application;  his fence exceeded the 6-feet limit because it was atop the 3-foot retaining wall; the fence was too close to the street; and the retaining wall could negatively impact how the property drains to adjacent properties. Lastly, the HOA told Rodina that it would consider a new application for the proposal if the fence dimensions were fixed and Rodina obtained assurances that grading and drainage changes would not burden other properties. The HOA offered to hold a meeting with Rodina to discuss the project further.

3

A few weeks later, after Rodina failed to make any changes to his property, the HOA informed Rodina that they would be holding a formal meeting to determine whether it would take legal action to enforce the CC&Rs and invited him to attend. In October 2016, the HOA sent a formal cease-and-desist letter to Rodina, explaining that the Board was considering legal action and invited him to submit a less ambitious project. In response, Rodina told the Board he was working with the county on receiving approval for the project. The HOA explained that compliance with the county codes was only part of the requirements and that Rodina also needed to comply with the CC&Rs. In November 2016, Rodina attended the Board meeting and informed the Board that the fence and wall were in compliance with relevant county codes. The Board reiterated that the construction nevertheless violated the CC&Rs and that it planned to proceed with legal action.

Legal Proceedings

In June 2017, the HOA filed a complaint against Rodina seeking injunctive relief. The HOA asked the district court to order Rodina to restore the property to its previous condition, or, alternatively, permit the HOA to restore the property and seek reimbursement from Rodina. In his answer, Rodina asserted the equitable defenses of waiver, laches, and estoppel. He also argued that the Association's action violated its good faith and fiduciary duties under Idaho Code section 30-29-830 and section 30-29-842 and the implied covenant of good faith and fair dealing. Specifically, he argued that the HOA waived its ability to deny his improvements because it had "approved the construction of similar improvements" with "similar fences" atop "similar landscaping and retaining walls."

In January 2018, the HOA filed a motion for summary judgment. The HOA argued that Rodina's waiver defense failed because the CC&Rs contain multiple no-waiver provisions and that Rodina failed to request approval for his actual project. In response, Rodina contended that genuine issues of material fact precluded summary judgment on the issues of waiver and the implied covenant of good faith and fair dealing. In support, Rodina submitted emails from the Board discussing two fence variances and some HOA Board meeting minutes which discussed fence variances. In response, the HOA argued that its approval of allegedly similar projects was "irrelevant" in light of the CC&Rs' non-waiver provision on enforcement and non-waiver provision for Architectural Committee approval. The HOA also argued that Rodina failed to produce any evidence of bad faith.

4

After the summary-judgment hearing in February 2018, the district court granted the HOA's motion. In its written decision, the district court determined that Rodina exceeded the scope of the First Application and, as finished, his project violated a number of the CC&R's. Rejecting Rodina's waiver defense, the court ruled that the plain language of CC&R section 9.5 "clearly states the 'committee/[HOA] does not waive the enforcement of the [CC&Rs] simply because it has previously approved similar proposals.'" In addition, the district court ruled that Rodina failed to submit sufficient evidence to support a finding that the HOA had approved similar projects. Next, the district court ruled that no genuine issues of material fact precluded an award of summary judgment on Rodina's allegation that the HOA violated its duty of good faith and fair dealing. The district court reasoned that the Board did not breach its duty of good faith and fair dealing by approving other variances before denying Rodina's project because the HOA's decision and actions were within its discretion. The district court ordered Rodina to remove the unapproved construction and to restore the property to compliance with the CC&Rs. The court also awarded attorney's fees to the HOA under section 8.1 of the CC&Rs.

Rodina promptly filed a motion to reconsider. With it, Rodina filed a copy of a memorandum decision and order issued in *Eagle Springs HOA v. Herren*—an earlier Ada County district court case involving the HOA—and a personal declaration. Rodina's personal declaration stated that the HOA's enforcement action against him "has not been made in good faith" and was, Rodina believed, "premised in part on my national origin, based upon derogatory statements made by one of Plaintiff's board members." Rodina also declared that "the enforcement of the covenants has [sic] and is not uniform." He attached seven photographs to the declarations which were "examples of violations that have not been enforced by the [HOA]." Rodina stated that he took the attached photographs "which show those violations by other members of the Association, including the HOA President." The attached photographs show various fences and driveways with no identifying information other than one photograph indicating "HOA President". Several of the photographs appear to be of the same home. Rodina argued that the HOA had waived its right to injunctive relief by failing to uniformly enforce the covenants. This, Rodina argued, should preclude summary judgment because the district court found that there were similar improvements in its decision granting the HOA's motion.

The district court denied Rodina's motion for reconsideration. The court declined to consider much of the evidence submitted on reconsideration for various reasons, including

insufficient foundation, relevancy, or that it contained a legal conclusion. The court also corrected Rodina's assertion that it had found that there were other similar projects:

> For clarification, this Court found there was not sufficient evidence to support a finding that the Committee had approved similar projects. Rodina has failed to present any additional evidence to support reconsideration of its finding that the record is insufficient to find a material issue of fact remains that the Association approved substantially similar projects.

Recognizing that the *Herren* decision was not binding, the district court nevertheless took its analysis into consideration but found it distinguishable. Rodina timely appeals.

## II.    STANDARD OF REVIEW

### A.  Summary Judgment

"This Court reviews a grant of summary judgment under the same standard of review the district court originally applied in its ruling." *Johnson v. Wal-Mart Stores, Inc.*, 164 Idaho 53, 56, 423 P.3d 1005, 1008 (2018) (citing *Conner v. Hodges*, 157 Idaho 19, 23, 333 P.3d 130, 134 (2014)). The movant carries the burden to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a); *Wattenbarger v. A.G. Edwards & Sons*, 150 Idaho 308, 317, 246 P.3d 961, 970 (2010). To determine whether the record contains genuine issues of material fact, the trial court "must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party." *Johnson*, 164 Idaho at 56, 423 P.3d at 1008 (quoting *Liberty Bankers Life Ins. v. Witherspoon, Kelley, Davenport & Toole, P.S.*, 159 Idaho 679, 685, 365 P.3d 1033, 1039 (2016)).

> If the moving party has demonstrated the absence of a question of material fact, the burden shifts to the nonmoving party to demonstrate an issue of material fact that will preclude summary judgment. The nonmoving party must present evidence contradicting that submitted by the movant, and which demonstrates a question of material fact. However, a mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment.

*Id.* (internal quotations and citations omitted).

In cases where the trial court will sit as the trier of fact, the trial court "is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *P.O. Ventures v. Loucks Family Irrevocable Tr.*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007) (citing *Intermountain*

6

*Forest Management v. Louisiana Pacific*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001)). "Resolution of the possible conflict between the inferences is within the responsibilities of the fact finder." *Id.* (citing *Cameron v. Neal*, 130 Idaho 898, 900, 950 P.2d 1237, 1239 (1997)).

### B. Restrictive Covenants

"Restrictive covenants, which restrict the uses to which a party may put his or her property, are valid and enforceable." *Brown v. Perkins*, 129 Idaho 189, 192, 923 P.2d 434, 437 (1996) (citing *Sun Valley Ctr. v. Sun Valley Co.*, 107 Idaho 411, 413, 690 P.2d 346, 348 (1984)). But such covenants are "in derogation of the common law right of a person to use land for all lawful purposes," so this Court will not construe them "to extend by implication any restriction not clearly expressed in the covenants." *Id.* (citing *Post v. Murphy*, 125 Idaho 473, 475, 873 P.2d 118, 120 (1994)). "All doubts and ambiguities are to be resolved in favor of the free use of land." *Id.* In other words, "restrictions that are found to be clearly expressed in the Restrictive Covenants are to be applied against the free use of land, while restrictions that are not clearly expressed will be resolved in favor of the free use of land." *Id.* (citing *Thomas v. Campbell*, 107 Idaho 398, 404 690 P.2d 333, 339 (1984)).

Otherwise, this Court generally applies the same rules of construction as it does for any other contract. *Sun Valley Ctr. v. Sun Valley Co.*, 107 Idaho 411, 413, 690 P.2d 346, 348 (1984).

> Where contract terms are clear and unambiguous, the interpretation of the contract's meaning is a question of law. On the other hand, where the terms of a contract are ambiguous, the interpretation of the contract's meaning is a question of fact. The preliminary question of whether a contract is ambiguous is a question of law over which this Court exercises free review . . . To determine whether there is an ambiguity in the Restrictive Covenants . . . [this] Court must determine whether the provisions are reasonably susceptible to conflicting interpretations. In interpreting any provisions of a contract or restrictive covenant, the entire agreement must be viewed as a whole.

*Brown*, 129 Idaho at 192–93, 923 P.2d at 437–38 (citations omitted).

### III.   ANALYSIS

**A. The district court did not err in determining that Rodina exceeded the plain language of the First Application and that his project violated the CC&Rs.**

1. <u>We decline to consider Rodina's argument that the Architectural Committee and the HOA failed to act on the First Application.</u>

Rodina argues that the First Application's approval was void because neither the Architectural Committee nor the HOA technically acted on it. Rodina contends that because Nick Barber handwrote the additional terms on the First Application, as opposed to the

7

Committee or the HOA, that the terms did not apply. Rodina argues that since the Committee never technically acted on the application, the application was automatically approved as submitted due to the Committee's failure to act on the submission. In response, the HOA asserts that Rodina failed to preserve this argument and invited any possible error because he admitted that the First Application was approved in his answer.

We agree with the HOA. This Court has consistently stated that we "will not hold that a trial court erred in making a decision on an issue or a party's position on an issue that it did not have the opportunity to address." *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019). To be properly preserved for appellate review, "both the issue and the party's position on the issue must be raised before the trial court . . . ." *Id.* In a similar vein, the invited-error doctrine "estop[s] a party from asserting an error when the party's own conduct induces the commission of the error." *City of Middleton v. Coleman Homes*, 163 Idaho 716, 727, 418 P.3d 1225, 1236 (2018) (quoting *Thomson v. Olsen*, 147 Idaho 99, 106, 205 P.3d 1235, 1242 (2009)). "The purpose of the invited error doctrine is to prevent a party who caused or played an important role in prompting a trial court to [take a certain action] from later challenging that [action] on appeal." *Id.* (quoting *Taylor v. McNichols*, 149 Idaho 826, 834, 243 P.3d 642, 650 (2010)).

Here, Rodina conceded that the First Application had been approved on numerous occasions. The first instance was in the Second Application, when he began by stating: "As per previously approved request by the HOA . . ." Next, Rodina admitted that the Architectural Committee approved his application in his answer by specifically admitting the allegations in paragraphs No. 20 and No. 21 in the HOA's complaint. There, the HOA alleged that "[Rodina] applied for approval, and was granted approval by the Architectural Committee" and the "Approved Work was completed on or by September 11, 2016." Likewise, Rodina argued that the HOA approved his entire project, not just the first phase, in his summary-judgment motions. He took the same position during oral argument at the summary-judgment hearing.

And so, even if error could be assigned to the district court's decision on this point, no hint of Rodina's appellate argument can be found below. Thus, Rodina failed to preserve this issue for appeal. *See Gonzalez*, 165 Idaho at 99, 439 P.3d at 1271. In addition, Rodina played an important role in creating any possible error that could be assigned to the district court's decision by continually and consistently asserting that the First Application had been approved. *See City*

8

*of Middleton v. Coleman Homes*, 163 Idaho at 727, 418 P.3d at 1236. Thus, Rodina is estopped from asserting error under the invited-error doctrine.

    2.  <u>Rodina's project exceeded the plain terms of the First Application.</u>

Rodina next argues that the First Application should be read to cover his project. The district court determined that many of Rodina's improvements exceeded the scope of the First Application. As a consequence, Rodina violated section 4.1 of the CC&Rs by failing to get the requisite approval for those aspects which exceeded the First Application. In addition, Rodina's project was found to be in violation of specific provisions of the CC&Rs as follows:

- The new fence's height exceeded 6 feet without prior approval in violation of section 4.2.4(a) (requiring fences to be no higher than six feet).

- The new fence was built closer than 20 feet to N. Cayuse Way in violation of section 4.2.4(a) (stating that fences shall not extend closer to any street than 20 feet).

- The new fence was "substantially different" from the prior fence in violations of Section 4.2.3 (requiring "general conformance" for fences) and Nick Barber's comments (stating that the fence be "stained to match").

- The retaining wall did not fall under the approval for "landscaping" because the "landscaping" and "walls" are listed as separate improvements under section 3.12.

Reasoning that its grant of injunctive relief to remove the retaining wall and fence would remedy all the remaining allegations, the district court dismissed the HOA's claims on grading and drainage violations.

We apply a de novo review to the plain meaning of the CC&Rs and reach the same conclusion. "The determination of whether a document is ambiguous is a question of law, over which we exercise free review." *Atwood v. Smith*, 143 Idaho 110, 114, 138 P.3d 310, 314 (2006). Rodina's project ran afoul of the CC&Rs' requirement that he receive prior approval. Unlike the Second Application, the First Application does not even suggest that Rodina would build a retaining wall, construct a new fence, or move the north/south fence closer to N. Cayuse Way. Contrary to Rodina's claims, building a separate retaining wall does not fall under "repairing" or "leveling" the existing fence. As used, the term "leveling" refers to straightening out the horizontal axis so the fence would sit parallel to the house's horizontal lines. While this might have necessarily included raising one side, it does not necessarily include constructing a retaining wall or raising the entire fence and moving it closer to the street. Likewise,

9

"extend[ing]" the fence "to cover the full length of the house" plainly means extending the north/south axis of the fence closer to Big Spring Blvd. (Which would thereby "cover" more of the house as it extends further to the front of the house.) The east/west axis extending toward N. Cayuse Way already "covered" the entire length of the back of the house. We agree with the district court that the retaining wall cannot be read into the term "landscaping" because the definition of improvements in the CC&Rs lists "landscaping" and "walls" separately. *See Twin Lakes Vill. Prop. Ass'n. v. Crowley*, 124 Idaho 132, 137, 857 P.2d 611, 616 (1993) ("[V]arious provisions in a contract must be construed, if possible, so to give force and effect to every part thereof.") (citation omitted).

In addition, Rodina's project also violated specific covenants and Barber's admonition that all repairs comply with the CC&Rs. First, the new fence impermissibly encroached on N. Cayuse Way. While Rodina's fence prior to the project was closer than the specified 20 feet from N. Cayuse Way, (the HOA "presumes" that this was done with the consent of the developer), this existing encroachment does not give a subsequent property owner carte blanche to enlarge the variance. Next, the fence exceeded the 6-foot height limit because it sat upon a three-foot retaining wall. While Rodina argues that the fence remains 6-feet high and only the ground level has changed, this hyper-technical interpretation is unavailing. At a practical level, the base of the new fence features a three-foot tall section which was then covered by fill dirt and the retaining wall. Without the unapproved fill dirt and retaining wall, there is no question the fence is around nine-feet tall.

In sum, Rodina has failed to show error in the district court's ruling that his project exceeded the scope of the First Application's approval and thus violated the CC&Rs.

## B. The district court properly awarded summary judgment in favor of the HOA on Rodina's defense of waiver.

On appeal, Rodina takes issue with the district court's reliance on the CC&Rs' no-waiver provisions. The Eagle Springs CC&Rs contain a number of no-waiver (or "anti-waiver") provisions. First, section 9.5 of the CC&Rs declares that any approval granted by the Architectural Committee "shall not be deemed to constitute a waiver of any right to withhold approval or consent as to any similar proposals, plans and specifications, drawings or matter whatever subsequently or additionally submitted for approval or consent." Next, section 9.9 provides that when the Architectural Committee grants a variance, "[t]he granting of such a variance shall not operate to waive any of the terms and provisions of [the CC&Rs] for any

10

purpose except as to the particular Building Lot and particular provision hereof covered by the variance . . . ." Lastly, section 15.5.5 states that "[t]he failure to enforce any of the provisions herein at any time shall not constitute a waiver of the right to enforce any such provision."

"Waiver is an equitable doctrine based upon fairness and justice." *Hecla Mining Co. v. Star-Morning Mining Co.*, 122 Idaho 778, 782, 839 P.2d 1192, 1196 (1992). It is "a voluntary, intentional relinquishment of a known right or advantage . . . ." *Pocatello Hosp. v. Quail Ridge Med. Inv'r*, 156 Idaho 709, 719, 330 P.3d 1067, 1077 (2014) (quoting *Knipe Land Co. v. Robertson*, 151 Idaho 449, 457, 259 P.3d 595, 603 (2011)). The "party asserting waiver must have acted in reliance upon the waiver and altered the party's position." *Hecla Mining Co.*, 122 Idaho at 782, 839 P.2d at 1196 (quoting *Brand S Corp. v. King*, 102 Idaho 731, 734, 639 P.2d 429, 432 (1981)). However, "[w]aiver will not be inferred from the parties' conduct absent 'a clear and unequivocal act manifesting an intent to waive, or from conduct amounting to estoppel.'" *Pocatello Hosp.*, 156 Idaho at 719, 330 P.3d at 1077 (quoting *Knipe Land Co.*, 151 Idaho at 458, 259 P.3d at 604). In the context of restrictive covenants, "[w]aiver usually involves a failure to object to other violations of the same or similar servitudes such that it would be unfair to allow the claimant to enforce the servitude against the current violation." Restatement (Third) of Property (Servitudes) § 8.3 (2000).

"The existence of waiver ordinarily is a question of fact and is foremost a question of intent." *Hecla Mining Co.*, 122 Idaho at 782, 839 P.2d at 1196. "In order to establish waiver the intention to waive must clearly appear, although it may be established by conduct." *Id.* "[I]f there is any substantial evidence in the record to support a waiver it is for the trier of fact to determine whether the evidence establishes such a waiver." *Fletcher v. Lone Mountain Rd. Ass'n*, 162 Idaho 347, 354, 396 P.3d 1229, 1236 (2017) (quoting *Riverside Dev. Co. v. Ritchie*, 103 Idaho 515, 518, 650 P.2d 657, 660 (1982). "When . . . there is no dispute as to the material facts and only one reasonable inference can be drawn from them, the question of whether a waiver has occurred becomes one of law." 13 Williston on Contracts § 39:21 (4th ed.).

In *Smith*, this Court addressed how certain CC&Rs may be waived and why the factual circumstances are important to that determination. 82 Idaho 141, 350 P.2d 348 (1960). There, the defendant purchased property within a subdivision and began to build a home. *Id.* at 145, 350 P.2d at 350. Halfway through construction, the HOA filed suit alleging that the home would violate the CC&Rs' prohibition against homes located within certain distances from "street

11

lines" *Id.* at 145-46, 350 P.2d at 350. At trial, the issue was whether "street line" referred to the curb line or the property line. *Id.* at 147, 350 P.2d at 351. Determining the CC&Rs to be unambiguous, the district court refused to admit the lot owner's proffered testimony from eight witnesses. *Id.* at 146, 350 P.2d at 351. The testimony would have, according to the lot owner, "disclose[d] that ten of the fourteen homes built in said subdivision were built at a distance of 25 feet back from the curb line, not 25 feet back from the property line." *Id.* at 147, 350 P.2d at 351.

This Court reversed, determining that the terms were ambiguous, so testimony regarding their common usage in the subdivision was admissible. *Id.* The Court then articulated why such testimony was important:

> Where a court of equity is asked to enforce a covenant by ordering specific performance and granting an injunction to prevent a breach of it, equitable principles will prevail and the rules of fair dealing and good conscience must be applied. So in this case if such proffered evidence discloses that a *substantial number of homes* within the subdivision are in fact located less than 25 feet from the front property line it would be inequitable to require appellants to comply with the restrictions under an interpretation or construction different from that applied to other property owners.

*Id.* at 148, 350 P.2d at 351–52 (emphasis added). Such testimony "would enable the court to determine if there had been such acquiescence in a particular interpretation by the parties interested as to in effect constitute an abandonment of the construction and interpretation contended for by respondents." *Id.* The Court further noted that "[w]hether there has been such acquiescence depends upon the circumstances of each case." *Id.* (citing 14 Am. Jur. 644, § 295.). The *Smith* court continued:

> Another material reason is that if such proffered evidence discloses that respondents have knowingly and without objection permitted *several other* grantees within the subdivision to *violate* the restrictions which they here seek to enforce against appellants equity will not assist them in such enforcement. Such rule rests upon the equitable ground that, if any one who has a right to enforce the covenant and so preserve the conditions which said covenant was designed to keep unaltered shall acquiesce in *material alterations* of those conditions, he cannot thereafter ask a court of equity to assist him in preserving them.

*Id.* at 148, 350 P.2d at 352 (emphasis added).

Absent from *Smith* were any so-called "anti-waiver" provisions to complicate the waiver inquiry. Despite failing to provide any authority in his brief, there is authority to support Rodina's theory that a non-waiver provision can be waived. For example, this Court has held that such a provision could be waived in an adhesion contract. *See Lewis v. Cont'l Life & Acc. Co.*,

12

93 Idaho 348, 355, 461 P.2d 243, 250 (1969). More generally, courts hold that "a party to a written contract can waive a provision of that contract by conduct despite the existence of a so-called antiwaiver or failure to enforce clause in the contract." 13 Williston on Contracts § § 39:36 (4th ed.). This rule "is based on the view that the nonwaiver provision itself, like any other term in the contract, is subject to waiver by agreement or conduct during performance." *Id.* Indeed, anti-waiver provisions are placed in contracts "to give a contracting party some assurance that its failure to require strict adherence to a contract's term will not result in a complete and unintended loss of its contract rights if it later decides that strict performance is desirable." *Id.* A contractual provision which states that "a term or condition of any sort cannot be eliminated by a waiver . . . is ineffective," so "a party has the same power to waive the condition . . . as though the provision did not exist." *Id.* But, "[i]n order to establish that an antiwaiver clause is not enforceable, the party asserting a waiver must show a clear intent to waive both the clause and the underlying contract provision." *Id.*

On appeal, Rodina's arguments mostly attack no-waiver provisions in restrictive covenants as a general matter. He asks this Court to void the CC&Rs' no-waiver provisions as a matter of public policy. He contends that "[i]t is reversible error to hold that the Plaintiff can never waive its right to enforce specific terms of the [CC&Rs] as a consequence of its past actions of approving similar improvements . . . or by failing to enforce [its] terms . . . ." Under Rodina's formulation, the district court supposedly reasoned that no matter how many violations or variances—no matter how severe the departure from the CC&Rs—the HOA could never waive enforcement or abandon the CC&Rs. Legal error might well be assigned to such reasoning, but we do not read the district court's decision so broadly.

When the district court rejected Rodina's argument based on approval of similar projects, the district court reasoned that "[r]egardless of whether the Architectural Committee has approved similar proposals[,]" the plain language of section 9.5 "clearly states the Committee/[HOA] does not waive the enforcement of the Declarations simply because it has previously approved similar proposals." Later in its decision, the district court also determined that Rodina had failed to advance enough evidence to show a genuine issue of material fact as to whether there were, in fact, "similar" projects: "Rodina has failed to submit any evidence of approval of substantially similar projects (such as having the same issues with fence height and movement as shown in the photographs of his Project)." While Rodina submitted HOA Board

13

Meeting Minutes and an email showing that the Association approved "variances in two recent incidents" from the 20-foot street distance requirement (§ 4.2.4(a)), the court noted that "[n]o approval form for either variance was submitted to create a material issue of fact for the Court's consideration in evaluating whether the projects were substantially similar . . . ." Later on, the district court clarified its decision when it denied Rodina's motion for reconsideration. In correcting Rodina's statements that the court had found the HOA failed to uniformly enforce the covenants, the court reiterated: "[T]his Court found there was not sufficient evidence to support a finding in that the Committee had approved similar projects."

Thus, the district court's decision pointedly relied more on that lack of evidence than a broad application of the no-waiver provisions. This being so, we find no error in the district court's analysis. To survive summary judgment and advance his defense to the factfinder, Rodina was required to show evidence to support the inference that the HOA waived provisions of the CC&Rs. *Fletcher*, 162 Idaho at 354, 396 P.3d at 1236. As this matter was set for a bench trial,[1] the trial court was "entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *P.O. Ventures v. Loucks Family Irrevocable Tr.*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007) (citing *Intermountain Forest Management v. Louisiana Pacific*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001)). Rodina was required to produce evidence supporting the inference that the HOA intended to waive the following restrictions:

- The Architectural Committee must approve all improvements (§4.1).

- Fences must be no higher than 6 feet (§ 4.2.4).

- Fences may not sit closer than 20 feet to any street. (§ 4.2.4)

- Fences must be "in general conformance" with the subdivision. (§ 4.2.3).

- Architectural Committee approval of one project does not waive the right to deny a subsequent proposal. (§ 9.5).

- A variance does not waive any provision other than for the particular lot and provision for which it is granted. (§ 9.9)

---

[1] At oral argument, some confusion arose regarding whether this case was set for a jury trial or a bench trial. Neither of the appellate counsel represented the parties for the entire proceedings below. The district court's decision stated that the matter was set for a bench trial and the only indication of a jury trial was a checked box in the parties' proposed scheduling plan accepted by the court. However, the minutes from a subsequent hearing reveal that the HOA informed the court this was an error and it should have reflected a bench trial. The court agreed and reset the matter. Regardless, neither party made a jury demand, and thus, a bench trial was proper. *See* I.R.C.P. 38(d) ("A party waives a jury trial unless its demand is properly served and filed.")

14

- Failure to enforce any provision does not waive the right to enforce that provision. (§ 15.5.5).

Viewed in the light most favorable to Rodina, his proffered evidence falls short.

Rodina claims the record discloses as many as four "noncomplying" fences which show that the Board "engaged in waiver". He first directs this Court's attention to an email from Nick Barber to the Board. There, Barber apprised the Board of Rodina's project and explained that they had "a dilemma," because the HOA approved two variances on prior occasions, but Rodina's fence was "in a higher profile location in the subdivision and more visible." Barber also wrote that the HOA's decision on Rodina's project would "likely set precedence [sic]." Next, Rodina points to the Board's minutes where it discussed the two prior variances. The July 18, 2016 minutes reveal that one of the two fences was "relocated prior to the board reviewing[,]" but "the board agreed it is not worth the legal fees that would be incurred by the HOA to force him to take it down." Next, Rodina directs this Court's attention to the Board's minutes from June 20, 2016, where there was additional discussion about a "fence relocation and variance request" that had been "relocated without prior approval" and was in violation of the CC&Rs prohibiting fences closer than 20 feet from the street. Rodina next highlights the Board's Minutes from August, where the Board discusses how denying a homeowner's "phase two of the fence install . . . would not stand up in court" because while "[t]here is a restriction that a fence cannot exceed six feet in height . . . it does not stipulate how short it can transit to and does not address 'decorative' options."

Recalling that "[w]aiver will not be inferred from the parties' conduct absent 'a clear and unequivocal act manifesting an intent to waive, or from conduct amounting to estoppel[,]'" Rodina has not met his burden to produce evidence supporting an inference of waiver by the HOA in this case. *Pocatello Hosp.*, 156 Idaho at 719, 330 P.3d at 1077 (quoting *Knipe Land Co.*, 151 Idaho at 457, 259 P.3d at 603). First, Rodina's reference to "noncomplying" fences is a mischaracterization. Rodina has produced a record which shows that the HOA approved two (at most, four) *variances* for fences. Under the CC&Rs, granting a variance excuses the violation for which it is granted. Thus, there is no violation of the CC&Rs. Likewise, granting a variance does not waive the HOA's ability to deny a variance in the future. So merely pointing to the approval of a similar project does not serve as a basis for Rodina to reasonably infer that the HOA waived the underlying covenant. Any variance granted by the Architectural Committee falls short of the

15

"clear and unequivocal act manifesting an intent to waive" the provisions subject to the variances.

Second, Rodina has produced two actions that would support an inference that the HOA intended to waive, at most, two sections of the CC&Rs. The Board granted one variance even though the fence was completed before the homeowner sought approval and sat closer than 20 feet to the street. While the variance absolves the impropriety, this at least shows an aberration from the plain terms of the CC&Rs. Although this supports the inference that the HOA waived enforcement of the prior-approval provision (§ 4.1) and the distance-from-the-street provision (§ 4.2.4), this evidence falls well short of "a clear and unequivocal act" to waive the specific covenants regarding fence height (§ 4.2.4(a)) and construction (§ 4.2.3). *Pocatello Hosp.*, 156 Idaho at 719, 330 P.3d at 1077.

Third, this evidence falls short of showing intent to waive any of the non-waiver provisions. For the project that was granted a variance despite failing to secure Architectural Committee approval, the HOA came to this conclusion because it was "not worth the legal fees" to enforce. The CC&Rs require the Board to consider such a factor under section 9.7.3 of the CC&Rs. ("[T]he Board shall determine whether there is a noncompliance and, if so, the nature thereof and the estimated cost of correcting or removing the same."). The Board assessed the severity of the violation and the cost to enforce it, and eventually decided to grant a variance. In contrast, the Board noted that Rodina's project is in "a higher profile location" than the other projects and ultimately decided against approving his proposed work or granting a variance. So, by presenting evidence that the Board discussed each proposal in detail and worried about "setting precedent," Rodina produced evidence which supports the inference that the Board did *not* intend to waive any of the CC&R's, let alone any of the non-waiver provisions.

As such, Rodina failed to produce sufficient evidence to show the Board waived its right to deny his application or enforce the CC&Rs against him. Even though some of the HOA's actions could support an inference of waiver for certain provisions, those actions also show compliance with the CC&Rs and fail to show intent to waive the no-waiver provisions. Thus, the district court properly awarded summary judgment to the HOA despite the conflicting inferences by adopting the most reasonable inference from the undisputed facts. *See P.O. Ventures*, 144 Idaho at 237, 159 P.3d at 874.

Lastly, we decline to address Rodina's arguments which are founded in hypotheticals rather than the facts of this case. The facts of this case remove it from the equitable considerations that carried the day in *Smith*. This is not a case were the HOA has failed to enforce its provisions and a substantial number of the homes are in violation. *Smith* asked whether a lot owner could seek injunctive relief to impose a restriction even though 71% of the homes were in violation of that particular CC&R if the plain meaning were given to the disputed terms. Here, there is no dispute about the plain meaning of the CC&Rs. Rather, every example of a "noncompliance" that Rodina produced was not a violation under the express terms of the CC&R's because each was granted a variance. This falls short of "several violations" constituting a "material alteration" of the restrictive covenants. *Smith*, 82 Idaho at 148, 350 P.2d at 352. And even if the variances were violations, they would represent only 4 homes in a 230-lot subdivision, or just under 2% of the homes. This stands in sharp contrast to the 71% of the homes in *Smith*.

## C. The district court properly determined that the HOA did not violate the implied covenant of good faith and fair dealing.

Rodina next argues that the HOA violated the implied covenant of good faith and fair dealing by failing to uniformly enforce the covenants. In support, Rodina cites to the Ada County district court decision in *Herren* and section 15.6 of the CC&Rs. Rodina also urges this Court to "broaden" the implied covenants by "requiring homeowners to carry the burden of proving, by a preponderance of the evidence, that waiving [a specific covenant] for some owners, but not others, has been made in good faith." In response, the HOA contends that Rodina raises this issue for the first time on appeal by only citing to Idaho's General Business Corporation statutes regarding fiduciary duties in his answer. Even if properly preserved, the HOA contends that the district court properly ruled that the HOA did not violate the implied covenants of good faith and fair dealing based on Rodina's lack of evidence and the plain terms of the CC&Rs. Lastly, the HOA contends that Rodina failed to preserve his broaden-the-implied-covenants argument below.

As a preliminary issue, the HOA's argument that Rodina failed to argue the implied covenant of good faith and fair dealing before his motion for reconsideration can be quickly disposed of. Rodina's answer stated:

> Rodina denies the allegations of Paragraph 7, because while the [HOA] may enforce the provisions of the [CC&Rs], Rodina specifically denies that this

17

enforcement is "fair and regular." The enforcement of the Declaration has been uneven and discriminatory. *The enforcement of the Declaration is subject to the limitations of the implied covenant of good faith and fair dealing*, and the conduct of the Association is also constrained to be exercised in good faith pursuant to I.C. 30-29-830, -842, and pursuant to their fiduciary duties, *see Steelman v. Mallory*, 110 Idaho 510, 716 P.2d 1282 (1986). The prosecution of this complaint exceeds those limits and is not a validly authorized action.

Rodina also advanced both sources in his memorandum opposing summary judgment, thereby preserving both issues for appeal.

As a second preliminary issue, we decline to analyze *Herren v. Eagle Springs HOA*—the Ada County district court case that Rodina advanced below and on appeal—in this opinion. The opinion of a lower court is not binding on this Court. And while the memorandum decision in that case contains sound legal reasoning, it involved a different homeowner, different facts, and different provisions of the CC&Rs. It is no more binding on this Court than it was on the district court. The district court properly distinguished it, and we find no reason to reiterate that analysis here.

While multiple sources of good faith and fiduciary duty were raised below, Rodina only advances the implied covenant of good faith and fair dealing on appeal. The implied covenant of good faith and fair dealing requires "that the parties perform in good faith the obligations imposed by their agreement," and a violation of the covenant occurs only when "either party violates, nullifies or significantly impairs any benefit of the contract." *Thurston Enterprises, Inc. v. Safeguard Bus. Sys., Inc.*, 164 Idaho 709, 723, 435 P.3d 489, 503 (2019) (citing *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 288, 824 P.2d 841, 863 (1991)). "No covenant will be implied which is contrary to the terms of the contract negotiated and executed by the parties." *Shawver v. Huckleberry Estates*, L.L.C., 140 Idaho 354, 362, 93 P.3d 685, 693 (2004) (citing *First Sec. Bank of Idaho v. Gaige*, 115 Idaho 172, 176, 765 P.2d 683, 687 (1988)).

In support, Rodina argues that section 15.6.1 of the CC&Rs requires the HOA to "uniformly enforce" the CC&Rs. That provision provides:

> Interpretation. The provisions of this Declaration shall be liberally construed to effectuate its purpose of creating a uniform plan for the development and operation of the Property. This Declaration shall be construed and governed under the laws of the State of Idaho.

This provision does not require the HOA to enforce its provisions uniformly. Rather, this provision urges the Architectural Committee to interpret the terms in light of the CC&Rs'

purpose "to protect, enhance and preserve the value, amenities, desirability, and attractiveness" of the subdivision. By requiring the Committee to approve every improvement, the CC&Rs ensure the uniformity of the subdivision. However, the Committee is empowered to grant variances to permit reasonable deviations when circumstances so require and changes would not sacrifice the overall uniform scheme. Because the CC&Rs grant the Committee discretion in approving improvements and granting variances, no violation of the implied covenant of good faith and fair dealing directly flows from a Committee decision denying an application. This is true even if it previously granted variances for other projects. We will not imply a covenant of uniform enforcement where none exists. *See Shawver*, 140 Idaho at 362, 93 P.3d at 693. For similar reasons, Rodina has not shown bad faith by pointing to the existence of other variances. He merely shows separate instances where the Committee exercised its discretion and reached a different outcome.

The undisputed material facts do not tell a story of bad faith or an unreasonable exercise of that discretion. Rodina submitted the First Application to the Committee. The Committee approved it. Only when Rodina began a project substantially outside the approval's scope did the HOA inquire about the project. Despite this, the HOA allowed Rodina to submit the Second Application for consideration. The HOA informed Rodina that the Second Application would not be approved because it violated a number of the CC&Rs. However, the HOA offered to meet with Rodina and invited him to submit an additional application with plans bringing the project into conformance. After an additional meeting, and no new submission by Rodina, the Committee denied the Second Application. Yet Rodina persisted with construction, telling the HOA that he was getting county approval. This was despite repeated explanations from the HOA that the county code did not supersede or replace the CC&Rs. Before bringing its complaint, the HOA again explained its position to Rodina and offered him another chance to bring his property into conformance to avoid any additional action. Rodina ignored the invitation.

Applying the undisputed facts to the CC&Rs, there is no violation of the implied covenants of good faith and fair dealing. As pointed out by the district court, the Board acted within the discretion granted to it under the CC&R's. The district court also noted that the HOA submitted evidence, including an affidavit from Nick Barber, showing the "[t]wo fence variance requests [were] submitted and were discussed in detail," which allowed the Committee to consider the "property location in the subdivision, visibility of the fence . . . the aesthetics of the

19

fence[, and] drainage pattern." The Board determined that Rodina's completed project "negatively impact[ed] the aesthetics of the subdivision and unreasonable interfere[d] with the use and enjoyment of neighboring lots." This evidence permitted the district court to infer that the Committee denied Rodina's Second Application only after "careful consideration" of the CC&Rs' guidelines. Thus, we find no error in the district court's conclusion that Rodina "failed to show a material issue of fact exists that the Board/Committee acted in a manner that was self-serving or outside the scope of their discretion. . . ."

Lastly, Rodina's argument that this Court should "broaden" the implied covenants is unsupported by argument or authority and not raised below. He simply asks this Court to "requir[e] homeowners associations to carry the burden of proving, by a preponderance of the evidence, that waving [a specific covenant] for some owners, but not others, has been made in good faith." Rodina's argument in this regard is that the district court's reliance on the no-waiver provision *could* allow bad faith dealing. The district court rejected this argument when Rodina made it in his motion for reconsideration, reasoning that Rodina "still does not include any argument or evidence that the Board's decision as to Rodina's Project was made in bad faith." We likewise decline to entertain this argument on appeal because it addresses situations not at issue in this case. *Ameritel Inns, Inc. v. Pocatello-Chubbuck Auditorium*, 146 Idaho 202, 205, 192 P.3d 1026, 1029 (2008) ("We decline to address a hypothetical scenario not at issue in this case, as such a discussion would be mere dicta."). To the extent Rodina argues that the HOA violated the implied covenants by bringing an enforcement action against him, the argument is meritless. Both below and on appeal, Rodina has argued that the HOA can waive its right of enforcement by failing to enforce provisions. Thus, Rodina effectively concedes that the HOA's decision to enforce Rodina's violations was necessary to protect the subdivision and the CC&Rs.

**D. Rodina raises his argument that Idaho should adopt the doctrine of reasonable expectations for the first time on appeal.**

Rodina asks this Court to recognize the doctrine of reasonable expectations and asserts that "the doctrine should be extended and included as a subset of the good faith and fair dealing doctrine, to all adhesion contracts, including restrictive covenants." Rodina raises this argument for the first time on appeal. As a result, we decline to entertain this argument. *See Bradford v. Roche Moving & Storage*, 147 Idaho 733, 736, 215 P.3d 453, 456 (2009) ("We will not address issues raised for the first time on appeal.") (citation omitted).

### E. Whether either party is entitled to attorney's fees.

Rodina asks for attorney's fees under a number of bases; however, he is not entitled to fees because he is not the prevailing party. The HOA argues that it, as the prevailing party, is entitled to attorney's fees on appeal under sections 8.1 and 7.5 of the CC&R's, the HOA's bylaws, and Idaho Code section 12-121. Section 8.1 of the CC&Rs reads in relevant part:

> In the event an attorney or attorneys are employed . . . to enforce compliance with or specific performance of the terms and conditions of this Declaration, each Owner agrees to pay reasonable attorney's fees in addition to any other relief or remedy obtained against such Owner.

Because we determine that the HOA prevails on appeal, we award the HOA attorney's fees on appeal under section 8.1 of the CC&Rs.

## CONCLUSION

We affirm the district court's order granting summary judgment in favor of the HOA and granting injunctive relief. Attorney's fees and costs to the HOA.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR**.