# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47846

| | | |
|---|---|---|
| ROBERT J. ELGEE, | ) | |
| | ) | |
|   Petitioner-Appellant- | ) | |
|   Cross Respondent, | ) | |
| | ) | |
| v. | ) | Boise, April 2021 Term |
| | ) | |
| THE RETIREMENT BOARD OF THE | ) | Opinion Filed: June 24, 2021 |
| PUBLIC EMPLOYEE RETIREMENT | ) | |
| SYSTEM OF IDAHO (PERSI), and its Board | ) | Melanie Gagnepain, Clerk |
| Members, JOY FISHER, JEFF CILEK, | ) | |
| CELIA R. GOULD, and PARK PRICE, | ) | |
| | ) | |
|   Respondents-Cross Appellants. | ) | |
| _____ | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Peter G. Barton, District Judge.

The decision of the district court is <u>affirmed</u> in part, <u>reversed</u> in part, and <u>remanded</u> for the entry of judgment consistent with this opinion.

Robert J. Elgee, Hailey, appellant pro se argued.

Lawrence G. Wasden Idaho Attorney General, Boise, for respondents. W. Scott Zanzig argued.

_____

BRODY, Justice.

This appeal stems from a years-long dispute between Robert Elgee and the Retirement Board of the Public Employee Retirement System of Idaho ("PERSI") regarding the payment of retirement benefits accrued during Elgee's service as a magistrate judge. The PERSI Board administers a statutorily-created retirement system for public employees in Idaho. It also adjudicates claims for benefits under those statutes. For clarity, we refer to the Retirement Board as "PERSI" when discussing the Board in its capacity as a litigant or administrator of the PERSI

1

system, and as the "PERSI Board" when referring to the Board in its adjudicatory capacity over PERSI administrative claims.

Elgee became eligible for PERSI benefits in 2010, but operating under an erroneous interpretation of the statutes it administers, PERSI maintained Elgee was not then entitled to receive benefits. Eleven years, numerous administrative determinations, and two judicial review actions later, the parties continue to disagree on issues relating to the calculation of benefits, the interest due on benefits, and whether Elgee is entitled to damages for the tax consequences of receiving a lump sum payment of retroactive benefits. We address each issue below.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

There are two retirement systems for judges in Idaho: PERSI and the Judges Retirement Fund ("JRF"). However, magistrate judges do not participate in the JRF; only district court judges, Court of Appeals judges, and Justices of the Idaho Supreme Court are eligible.  When a magistrate judge assumes a JRF-eligible judgeship, he or she has an option to continue in the PERSI system or to transfer to the JRF. *See* I.C. § 1-2001. Elgee served as a magistrate judge from 1992 until 2004. During this time, Elgee paid into PERSI for retirement benefits; however, when Elgee became a district judge in 2004, he elected to transfer to the JRF.

In August 2010, Elgee turned 60, which is the age at which he reached service retirement age under PERSI. At the time, there was considerable uncertainty as to how PERSI would handle benefit payments for Elgee and others in his position, i.e. members who were eligible for benefits under PERSI's age and years of service requirement, but who had left PERSI for the JRF and were still working as judges. Over the years, it appears at least some former magistrate judges received PERSI benefits while working as district court judges, although PERSI maintained in 2010 that working district court judges could not receive retirement benefits from PERSI. Contributing to the uncertainty—at least for Elgee—were several inconsistent statements regarding Elgee's eligibility to receive benefits that were made by PERSI and repeated by staff members of the Administrative Office of the Courts. Among the statements by PERSI was an estimated benefits statement provided to Elgee in April 2010. Besides stating Elgee was ineligible for benefits, this statement suggested that Elgee's retirement benefits could not be deferred past retirement age, and, contradictorily, that PERSI benefits would be deferred until Elgee chose to leave state employment completely.

2

While Elgee believed he was eligible for benefits in 2010, he did not apply to receive them then, under the mistaken belief that his retirement benefits would increase if he waited. However, fearing a potential statute of limitations problem if he continued to delay, Elgee submitted an application for retirement benefits in June 2013. On his application, Elgee selected PERSI's "contingent annuitant option," which would provide benefits to Elgee's wife if he predeceases her, instead of PERSI's "regular retirement option," which would not provide spousal benefits after his death. PERSI denied this application, maintaining that it could not legally process Elgee's application as long as he continued to work as a public employee.

In late 2014, Elgee filed an administrative complaint to contest the denial of his application and the PERSI Board referred the matter to a hearing officer. After evidentiary hearings and briefing, the hearing officer issued a recommended order and proposed findings of fact and conclusions of law in late 2015. The hearing officer recommended that the PERSI Board determine Elgee became eligible for benefits in 2010, even though he was still employed as a district court judge.

Though Elgee prevailed before the hearing officer, he filed a motion for reconsideration, asking the hearing officer to make additional determinations. Of note, Elgee argued that the hearing officer should further determine: (1) that interest on payments was due at the general legal interest rate of 12 percent under Idaho Code section 28-22-104, rather than the "regular interest" rate defined in the PERSI statutes; and (2) that he be awarded damages for the tax consequences of receiving benefits in a lump sum payment, rather than having received them monthly since 2010. The hearing officer denied the motion for reconsideration, rejecting both arguments.

In late 2016, the Board rejected the hearing officer's recommendation that Elgee was eligible for benefits in 2010, and it affirmed the original denial of Elgee's 2013 application. Since the PERSI Board found that Elgee was not eligible for benefits, it did not address the additional issues Elgee raised in his motion for reconsideration.

Soon thereafter, Elgee filed his first petition for judicial review, which was heard by senior district judge Gerald Schroeder. There were only two issues before the district court in the first judicial review action: (1) "[w]hether a magistrate judge terminates PERSI employment when he quits working as a magistrate judge . . ."; and (2) "[w]hether the State of Idaho is properly characterized as a 'PERSI-employer' with respect to employees who do not participate in the PERSI system . . . ." These issues related solely to the PERSI Board's reasons for maintaining

Elgee was ineligible for benefits while still working as a district court judge. Judge Schroeder did not consider the validity of Elgee's 2013 application or the effect of his failure to apply for benefits in 2010.

While the first judicial review action was pending, Elgee retired as a district court judge, submitted a second application for benefits in May 2017, and began receiving monthly retirement benefits in June 2017.

In late 2017, Judge Schroeder ruled the PERSI Board had erred in its determination that Elgee was not eligible for benefits, set aside the PERSI Board's 2016 determination, and remanded the case for further proceedings. On remand, Elgee raised four issues that were not addressed by Judge Schroeder's decision: (1) whether PERSI correctly calculated the principal amount due using the rate under the contingent annuitant option, instead of the higher regular retirement option; (2) whether interest began to accrue in 2010, when Elgee first became eligible for benefits, or 2013 when he first submitted an application for benefits; (3) whether interest accrued on the unpaid benefits at the regular rate under the PERSI statutes, or the general legal interest rate; and (4) whether PERSI was "responsible for a tax loss caused Elgee by its refusal to pay Elgee his benefits" as they came due. Though the parties did not agree on these matters, PERSI paid Elgee $163,938.50 in April 2018, representing its calculation of the principal sum of benefits owed to Elgee based on the contingent annuitant option for the period between September 2010 and May 2017.

In May 2018, the PERSI Board decided three of the four issues on remand based on the record developed in the prior administrative proceedings, largely adopting the findings of the hearing officer in 2015. However, on the issue of when interest began to accrue, the PERSI Board held an additional evidentiary hearing. In December 2018, the PERSI Board issued its findings of fact and conclusions of law concerning the date of interest accrual issue.

Between its May and December 2018 decisions, the PERSI Board held on remand that: (1) it had properly calculated the principal amount due to Elgee using the contingent annuitant rate (2) interest began to accrue in 2013 when he first applied for benefits; (3) interest on unpaid benefits was due at the "regular" rate provided for in PERSI statutes; and (4) Elgee's tax loss claim was (a) not permissible under the PERSI statutes and (b) unsupported by evidence.

Elgee brought a second judicial review action challenging each of these determinations in December 2018, which was heard by district judge Peter Barton. However, Elgee filed a motion

4

to dismiss the tax loss issue in May 2019. The motion itself is not in the record, but the parties presented argument on the motion during a district court hearing on June 28, 2019.

In January 2020, Judge Barton issued a decision on the second petition for judicial review. Judge Barton affirmed the determination of the PERSI Board on the first and second issues (applicable interest rate and the date of interest accrual), but reversed regarding the third issue (contingent annuitant versus regular retirement option), and dismissed Elgee's tax loss claim without prejudice. Elgee timely appealed the district court's decision on the issues related to interest. PERSI then cross-appealed the district court's decision on the matter of the contingent annuitant rate and the dismissal of Elgee's tax loss claim without prejudice.

## II.     STANDARD OF REVIEW

"In an appeal from a district court where the court was acting in its appellate capacity under the Idaho Administrative Procedure Act ('IDAPA'), 'we review the decision of the district court to determine whether it correctly decided the issues presented to it.' " *Rangen, Inc. v. Idaho Dep't of Water Res.*, 159 Idaho 798, 804, 367 P.3d 193, 199 (2016) (quoting *Clear Springs Foods v. Spackman,* 150 Idaho 790, 797, 252 P.3d 71, 78 (2011)). The administrative procedure act dictates that a reviewing court affirm the agency's action unless it finds that the agency's findings, inferences, conclusions or decisions are:

> (a) in violation of constitutional or statutory provisions;
> (b) in excess of the statutory authority of the agency;
> (c) made upon unlawful procedure;
> (d) not supported by substantial evidence on the record as a whole; or
> (e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279.

## III.     ANALYSIS

**A. The district court correctly affirmed the PERSI Board's determination regarding the applicable interest rate, but erred in holding that interest began to accrue in 2013.**

On remand after the first judicial review action, the PERSI Board calculated the benefit payments due to Elgee starting from July 2013 (the month after he submitted his first application for benefits) through May 2017 (the last month of his service as a district judge). The PERSI Board also determined that interest was due on this sum at the "regular interest" rate pursuant to Idaho Code section 59-1305(6). Under the PERSI rules, the regular interest rate is set by the Board and varies year-to-year according to the performance of the PERSI fund. I.C. § 59-1302(26); IDAPA

5

59.01.01.350. In the years relevant here, the regular interest rate has fluctuated between approximately 1% and 15% annually, with most years closer to the low end of that range.

Elgee disputed the PERSI Board's calculation, asserting he was entitled to benefits accruing from September 2010 (the month he became eligible to receive benefits under PERSI's service and age requirements) and at the legal rate of interest under Idaho Code section 28-22-104(1), which is 12 percent per year.

The district court held that the PERSI Board correctly determined both the applicable interest rate and the date of accrual. For the reasons below, we affirm in part and reverse in part.

1. The PERSI-specific interest statute applies in this case.

The statutory framework for the PERSI system is set out in Idaho Code title 59, chapter 13. Section 59-1305 provides that when correcting errors in the payment of benefits, "regular interest" is to be added to the principal amount of the error:

> If the board determines that it has previously overpaid or underpaid benefits provided under this chapter . . . , it shall correct the prior error. In the event of prior underpayment, the board shall forthwith pay the amount of the underpayment together with regular interest thereon. In the event of prior overpayment, the board may offset future benefit payments by the amount of the prior overpayment together with regular interest thereon. . . . Nothing herein contained shall be construed to limit the rights of a member or the board to pursue any other remedy provided by law.

I.C. § 59-1305(6).

On the other hand, Idaho Code section 28-22-104 (contained within the Idaho Code title pertaining to commercial transactions) provides that interest accrues at a default rate of 12 percent in certain circumstances:

> (1) When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of twelve cents (12¢) on the hundred by the year on:
>
> > 1. Money due by express contract.
> >
> > . . .
> >
> > 4. Money received to the use of another and retained beyond a reasonable time without the owner's consent, express or implied.

I.C. § 28-22-104.

Elgee argued in the district court that the PERSI-specific statute has several preconditions to applicability that PERSI cannot meet. Therefore, he argued that section 28-22-104 is the only interest statute that could apply. Specifically, Elgee argued that the PERSI-specific statute contains

five elements PERSI could not meet: (1) "the Board must 'determine' that it underpaid or overpaid" benefits, rather than determine it would not pay benefits; (2) this determination must be made after an erroneous payment has been made, rather than after an instance of nonpayment; (3) the determination must be that it has made a "prior error," which must have been an inadvertent mistake, not an error of law; (4) there must be an actual "event" of underpayment or overpayment; and (5) PERSI must correct any errors "forthwith" instead of correcting the error as the result of litigation.

The district court interpreted Elgee's argument as containing two basic contentions: (1) that the PERSI-specific statute applies only in cases of underpayment, as opposed to nonpayment, and (2) that it applies only in cases of inadvertent errors, rather than intentional refusals to pay. The district court found neither contention persuasive.

As to the first contention, the district court held that the PERSI-specific statute applied in cases of nonpayment as well as underpayment under the "plain, obvious, and rational" meaning of the statute. As the district court reasoned, the word "underpayment" encompasses "nonpayment" because "[b]eing paid less than one is owed, whether being paid some or none, is being 'underpaid.'" The district court was similarly unconvinced by Elgee's second contention. However, it did not offer analysis other than to say PERSI's failure to pay benefits after Elgee applied in 2013 was a "prior error" as that term is used in section 59-1305.

Upon rejecting Elgee's argument that the PERSI-specific statute could not apply, the district court noted the tenet of statutory interpretation that where two statutes could apply to the same matter, the more specifically applicable statute controls. *See Mulder v. Liberty Nw. Ins. Co.*, 135 Idaho 52, 57, 14 P.3d 372, 377 (2000). Because section 59-1305 is PERSI-specific and section 28-22-104 is generally applicable, the district court held the PERSI Board correctly determined section 59-1305 applies in this case.

We hold that the district court was correct in this determination. To begin, we agree that Elgee's five "elements" may be condensed to the two basic arguments identified by the district court. As to the first argument, it is axiomatic that nonpayment is underpayment. While, Elgee contends the district court was "plainly wrong" to reject his nonpayment argument because it "found a different word [i.e., "underpayment"] to define on its own terms," this argument is not well taken. The district court interpreted the words of the statute; it is Elgee who directs our attention to a word the legislature did not use.

7

Relatedly, Elgee asserts that the canon of *expressio unis est exclusio alterius* (i.e. the expression of one thing is the exclusion of another) applies here. Elgee argues that by mentioning only overpayment and underpayment, the "only possible conclusion" is that the legislature intended to exclude instances of nonpayment from the scope of the statute. This argument is misplaced because, as we have noted, underpayment includes the concept of nonpayment. It is illogical to assume that a more generic term excludes a more specific term within the same category. Certainly, if the legislature drew a distinction between underpayment and nonpayment in the PERSI statutes, Elgee would have a colorable argument. But nowhere has the legislature drawn any such distinction.

Additionally, Elgee points to the word "event" in the phrase "in the event of prior underpayment" and asserts that the PERSI-specific statute requires there to be an error in "the *actual payment* of benefits." (Emphasis by Elgee). Elgee reasons that because nonpayment is a non-event, the statute cannot apply. However, Elgee bends the text too far. As used in the statute, "event" is not a noun of standalone significance, but part of the prepositional phrase "in the event of." To assume the legislature intended to define the scope of the statute's application by using a particular prepositional phrase—instead of equivalent expressions such as "in circumstances of" or "in cases of"—is not reasonable.

As to Elgee's second argument (that the PERSI-specific statute does not apply where underpayment is intentional), the statute provides no foundation for Elgee's contention. The statute speaks only of PERSI correcting errors in payment; it says nothing of how or why those errors must come about. We will not read into a statute terms that are not there. *Matter of Est. of Brown*, 166 Idaho 472, 479, 461 P.3d 754, 761 (2020) (citing *Matter of Adoption of Chaney*, 126 Idaho 554, 558, 887 P.2d 1061, 1065 (1995)). Accordingly, the district court correctly held that Idaho Code section 59-1305(6) applied as the more specifically applicable interest provision.

2. Interest began to accrue in 2010, rather than 2013.

On remand from the first judicial review action, the PERSI Board held an evidentiary hearing on the issue of when interest began to accrue, after which it issued findings of fact and conclusions of law. The PERSI Board found that members who are eligible for benefits may defer receiving benefits past retirement age under the PERSI rules; that benefits are not due until a member submits a completed application for benefits; and that a member who does not apply is presumed to have chosen to defer benefits. If a member chooses to defer benefits, he does not

forfeit any payments he was eligible to receive. Instead, he may apply later and can choose his date of eligibility as his "effective date of retirement." If he does so, benefits will be paid to him retroactive to his eligibility date in a lump sum. However, PERSI does not pay interest on such a lump sum because benefits are not "due" until applied for. As to Elgee in particular, the PERSI Board found that Elgee chose not to apply for benefits in 2010 and that he did not submit a completed application until 2013. Thus, it concluded that Elgee voluntarily deferred retirement and that interest did not begin accruing on benefits until 2013. The district court affirmed this determination of the PERSI Board.

Elgee appears to concede that the PERSI Board's factual findings and legal conclusions are correct in the "ordinary case." However, because the Board initially rejected his 2013 application, he argues it should not be permitted to "rewrite history" by giving the application legal effect now. He also argues that equitable principles dictate interest should accrue from September 2010.

PERSI argues that the district court correctly determined that Elgee was not due payments until he applied for benefits in 2013, and that Elgee is seeking "a windfall that no other PERSI member enjoys" without a valid basis. While we find Elgee's arguments regarding the 2013 application to be factually and legally flawed, we agree that equity provides a valid basis to award interest from 2010 under the particular circumstances of this case.

*a. Elgee's arguments that the 2013 application is void are unavailing.*

Elgee presents numerous arguments that his 2013 application for benefits is a legal nullity. Notably, the premise underlying all of these arguments is that PERSI seeks to give effect to the application in order to circumvent a decision by Judge Schroeder that benefits were due to Elgee in 2010. However, Judge Schroeder's decision in the first judicial review action does not support this premise. The issues in the first judicial review action involved only whether Elgee became *eligible* for benefits beginning in 2010. When those benefits became *due*, or whether Elgee was required to take additional steps to receive them, was not addressed. Because Elgee's arguments that the 2013 application was void assume a flawed premise, and because we find Elgee is entitled to interest from 2010 under his equitable argument, it is not necessary to address these arguments in order to decide the date of accrual issue. Nevertheless, Elgee's arguments about the legal effect of the 2013 application bear on the contingent annuitant issue discussed below, so we address them briefly here.

9

### i. Law of the case and issue preclusion.

Elgee points to the holding in the first judicial review action that he was eligible for benefits in 2010, and asserts that issue preclusion and the law of the case doctrine prevent PERSI from "an attempt to re-determine the correct start date of Elgee's eligibility or payments, or the legal effect of an application." This argument contains both a strawman and a non sequitur. As for the strawman, PERSI has not disputed the date Elgee was eligible for benefits since Judge Schroeder's decision. Indeed, it has already paid Elgee the principal amount of benefits it calculated were due for the 2010 to 2013 period. PERSI has only disputed that payments were owing in 2010, and, thus, whether Elgee is entitled to interest for this period. As for the non sequitur, the district court in the first judicial review action did not address when payments were due, nor the legal effect of Elgee's application. Thus, it does not follow that its decision has become the law of the case or has preclusive effect on these matters.

### ii. Claim preclusion.

Elgee argues that claim preclusion bars PERSI from giving effect to the 2013 application because "[t]he due date of payments was 'necessarily involved' in the matter before Judge Schroeder." Again, Elgee's argument implies that issues were before the district court in the first judicial review action that were not. Moreover, claim preclusion is an affirmative defense that bars litigation of a claim that was or should have been decided in an earlier action. *Oregon Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co. of Idaho*, 148 Idaho 47, 50, 218 P.3d 391, 394 (2009). Here, however, the date that interest began to accrue is not a "claim" Elgee is defending against; it is a factual matter relevant to damages in a claim *brought by Elgee*. As such, claim preclusion does not apply.

### iii. Anticipatory repudiation.

Elgee argues that PERSI is prohibited from giving legal effect to the 2013 application by the contract doctrine of anticipatory repudiation. Elgee contends that a party who definitely and unequivocally repudiates a contract may not retract its repudiation once a suit is brought under the contract. Even assuming that the law of contracts applies in a case where the parties' rights and responsibilities are defined by statute and rule, rather than by mutual agreement, Elgee's argument fails. PERSI never definitely and unequivocally repudiated the "contract" with Elgee; it misapplied the conditions precedent to its obligation to begin performance. Further, Elgee has accepted retirement benefits from PERSI—tendered in performance of its obligation for his magistrate

10

service—since April 2018. Elgee's argument that PERSI repudiated its obligations is not supported by the facts.

### iv. "A mistake of law can afford no relief."

Elgee contends that "[m]istakes of law, generally, afford no basis for relief." Thus, he argues that PERSI is barred from giving legal effect to the 2013 application because it "cannot take a mulligan" and "go back and correctly apply the law it declined to follow in 2013." Elgee's argument is without merit. PERSI was not seeking "relief" from a mistake of law when it gave effect to Elgee's 2013 application; it was proceeding under its usual process after Judge Schroeder's decision corrected its mistake of law. For the same reason, PERSI was not taking a "mulligan"; it was complying with its obligations for the first time.

### v. Quasi-estoppel.

Elgee argues that PERSI giving effect to the 2013 application is a change of position to his detriment that is barred by the doctrine of quasi-estoppel. Specifically, Elgee contends that PERSI cannot change from the position expressed in a 2013 letter to Elgee by PERSI Executive Director Don Drum that "as long as you are an employee of the State of Idaho we will not be able to process your retirement application."

Quasi-estoppel applies when:

> (1) the offending party took a different position than his or her original position and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in.

*Atwood v. Smith*, 143 Idaho 110, 114, 138 P.3d 310, 314 (2006) (citing *C & G, Inc. v. Canyon Highway Dist. No. 4*, 139 Idaho 140, 144, 75 P.3d 194, 198 (2003)). Here, the only reason PERSI changed its position regarding Elgee's 2013 application was because Elgee prevailed in the first judicial review action regarding eligibility. In effect, Elgee is arguing that PERSI should be estopped from complying with a court order that resulted from a lawsuit he brought and won. Quasi-estoppel cannot reasonably apply in this circumstance.

### b. Equity dictates that Elgee should receive interest from 2010.

While Elgee's arguments above are unavailing, he also alleges there are several "equitable factors" this Court should consider to hold that interest began to accrue in 2010. Some of these factors are unpersuasive. For instance, Elgee argues PERSI should suffer an equitable sanction for

11

litigating in bad faith, but as evidence of bad faith he points to little other than his frustration that litigation has been ongoing for several years and his fervent disagreement with PERSI's legal positions. Elgee also argues that interest should run from 2010 because PERSI had a fiduciary duty to provide him with accurate information about its policies, but it failed to do so.

PERSI counters that Elgee is simply seeking a windfall because it "consistently applies its rule requiring members to submit a retirement application to obtain benefits"; it "does not pay benefits to any member until the member submits a retirement application"; and Elgee "voluntarily waited nearly three years before applying for benefits."

We agree with Elgee. Idaho Code section 59-1301(2) provides that the PERSI Board owes fiduciary duties to its members. Fiduciaries have a duty to keep beneficiaries reasonably apprised of material information necessary for the protection of their interests. *See* Restatement (Third) of Trusts § 82(1)(c). A breach of a fiduciary duty may give rise to a remedy in equity. *See* 30A C.J.S. *Equity* § 59 ("A court of equity has jurisdiction over an alleged breach, abuse, or betrayal of a duty or obligation that arises out of fiduciary or trust relations . . . ."). Under the circumstances of this case, we find that interest should be equitably deemed to run from the date of Elgee's eligibility in 2010.

In the first judicial review action, Judge Schroeder found that PERSI failed to clearly and consistently communicate its policies to Elgee:

> It was the Board's responsibility to develop protocols to clearly and accurately advise [Elgee] and others similarly situated of the Board's interpretation of [PERSI members'] rights. . . .
>
> . . .
>
> Whatever the proper interpretation of applicable statutes, PERSI has not communicated a clear, consistent position to [Elgee] over a period greater than a decade. Without a rule in place that would make the Board's position unmistakable, staff had to rely on its understanding of the practices and consequences. If the Board had a different interpretation than was communicated to [Elgee], there was a failure in oversight.

Critically, one of the inconsistencies underlying Judge Schroeder's finding was that PERSI informed Elgee in April 2010 that benefits could not be deferred past retirement age, even as it maintained that his benefits would be deferred until he chose to leave service as a district judge.

In light of Judge Schroeder's findings, we hold that PERSI fell short of its duty to reasonably provide Elgee with information necessary for him to protect his interests. In reaching this conclusion, we emphasize that PERSI's failure did not result from a slip of the tongue or a

simple mistake by a PERSI staff member. Rather, PERSI's failure stemmed from its failure to establish and communicate a coherent policy on matters that Judge Schroeder found were neither "subtle [n]or unpredictable" and that were of great importance to the magistrate judges in the PERSI system. That failure resulted in substantial uncertainty such that we find it fundamentally unfair for PERSI to maintain Elgee's failure to apply for benefits until 2013 was a "voluntary deferral." Accordingly, as an equitable remedy, we hold Elgee is entitled to interest from the date of his eligibility for benefits in 2010.

Finally, we acknowledge that in its conclusions of law on the date of interest accrual issue the PERSI Board found the requirement to file an application before benefits came due was "clearly addressed" by the PERSI handbook and IDAPA 59.01.06.122 (2018) ("Rule 122"). We are skeptical of this finding. In particular, Rule 122 mentions filing an application, but focuses on the need for a spouse's consent to the retirement option selected. S*ee id.* (subsequently amended and recodified as IDAPA 59.01.01.531). We also find the relevant language in the handbook is less than clear on whether the filing of an application is the triggering event for benefits becoming due. However, because Elgee did not contest this finding of the PERSI Board, we have no need to decide its validity here. That said, the clarity of PERSI's rules and handbook regarding the application requirement is immaterial because our decision is based on PERSI's failure to articulate a clear policy on the eligibility of former magistrate judges who participate in the JRF, as well as the inconsistent statements made directly to Elgee.

**B. The district court erred in determining that Elgee was entitled to benefits under the regular retirement option rather than the contingent annuitant option.**

Another issue raised by Elgee on remand was whether he was entitled to benefits calculated at the rate for PERSI's contingent annuitant option or regular retirement option. Under the contingent annuitant option, PERSI pays lower monthly benefits to a member than under the regular retirement option. However, unlike the regular retirement option, benefits do not necessarily cease upon the member's death. Instead, the member designates his or her spouse as a contingent annuitant, who is entitled to receive benefit payments in place of the deceased member for the remainder of his or her life. Though Elgee selected the contingent annuitant option on his 2013 application (and his 2017 application), he argued on remand that benefits should be calculated at the higher regular retirement rate. Specifically, Elgee argued that because PERSI denied his 2013 application, his wife had never been a contingent annuitant and, therefore, PERSI was seeking to charge him for a benefit it did not provide. The PERSI Board disagreed, concluding

13

that Elgee was entitled to retroactive payment of benefits at the contingent annuitant rate he selected in 2013. However, the district court ruled against the PERSI Board on the basis of quasi-estoppel.

As noted above, quasi-estoppel applies when:

(1) the offending party took a different position than his or her original position and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in.

*Atwood v. Smith*, 143 Idaho 110, 114, 138 P.3d 310, 314 (2006). The district court found the first element was satisfied because PERSI rejected Elgee's application for benefits in 2013, but sought to give effect to his selection of the contingent annuitant option on that application on remand in 2018. As to the second element, the district court found it would be unconscionable to allow PERSI to pay retroactive benefits at the lower contingent annuitant rate because PERSI knows Elgee has not passed away. As the district court wrote: "PERSI's action is like retroactively being forced to pay for fire insurance for a past period, when the insurer knows that your house did not burn down during that period. It is just premiums without even a metaphysical chance of payout or of protection."

On appeal, PERSI argues that the district court erred in setting aside the PERSI Board's determination because Elgee should be bound—as other PERSI members are under PERSI's rules—to the selection he made on his application(s). In response, Elgee echoes the ruling of the district court regarding quasi-estoppel and reiterates several of his arguments that the 2013 application is void. Because we have already rejected Elgee's arguments that the 2013 application is void, we need only consider whether the district court correctly applied quasi-estoppel. We hold that it did not.

PERSI's "change of position" identified by the district court in the second judicial review action was prompted by Elgee's success in the first judicial review action. Where a party changes its position to comply with a valid court order, there is no inequity in the change and quasi-estoppel cannot apply. We also find there is no inequity in holding Elgee to his selection of the contingent annuitant option. Though Elgee complains PERSI seeks to charge him for a benefit it never provided, PERSI never had an obligation to provide contingent annuitant benefits to Elgee's wife because Elgee is alive. And if Elgee had died before the question of his eligibility was resolved by

14

Judge Schroeder's decision, Elgee's wife could have pursued a (likely meritorious) cause of action for benefits.

Moreover, the district court's analogy to fire insurance is inapt. A casualty insurer agrees to cover a fixed amount of losses over a fixed period of time in exchange for a fixed amount in premiums. However, in offering the contingent annuitant option, PERSI has agreed to provide an indeterminate amount in benefits over an indeterminate period of time, depending on the length of Elgee's wife's life relative to Elgee's life. In exchange, Elgee accepts reduced monthly benefit payments from PERSI (calculated by reference to actuarial tables) for an indeterminate period, depending on the number of months Elgee lives past retirement. Thus, PERSI has none of the certainty the fire insurer has in the district court's analogy. Beyond its actuaries' best estimates, PERSI does not—and cannot—know whether the "premiums" it charges Elgee (in the form of reduced benefits) will be greater than or less than the benefits it may someday provide to Elgee's wife, if any.

### C. The district court erred by dismissing Elgee's tax loss claim without prejudice.

Elgee argues that PERSI should be liable to him for the adverse tax consequences of paying benefits in a lump sum in a single year, instead of having paid them over several years as they became due. This type of claim is sometimes referred to as a "tax neutralization claim." *See Sonoma Apartment Assocs. v. United States*, 127 Fed. Cl. 721 (2016). However, the parties have referred to it as a "tax loss claim," and we will adopt their nomenclature for the purpose of this opinion. We note there is considerable disagreement among courts in other jurisdictions whether such claims can be maintained, and if so, under what circumstances. *See id.* (surveying approaches to the issue). We have not before addressed this question. Because we need only consider whether Elgee may seek tax loss damages under the PERSI statutes, we do not consider whether such a claim is maintainable in any other circumstance.

Elgee first asserted a tax loss claim in his motion for reconsideration of the hearing officer's 2015 findings. The hearing officer rejected Elgee's claim for two reasons: (1) Elgee's claimed tax loss was "entirely speculative" in light of his proffered evidence; and (2) there is no provision in the PERSI statutes allowing members to recover tax loss damages.

On remand after the first judicial review, Elgee revived his tax loss claim, in part. While Elgee acknowledged that he did not know whether he would suffer a tax loss or its amount, he sought a determination that PERSI would be liable for tax loss damages *if* he were ultimately to

suffer them. The PERSI Board determined it would not be liable, agreeing with the 2015 hearing officer's finding that tax loss damages were not recoverable under the PERSI statutes. However, the PERSI Board went further and made a second determination that "there is not adequate evidence in the record establishing that Petitioner has suffered or will suffer any tax loss."

A few points bear mentioning before we discuss the proceedings on this issue in the district court. First, it is apparent that Elgee was seeking a declaratory ruling from PERSI on remand, though he did not use the term. Elgee was not seeking to prove a present claim, but to have the PERSI Board construe the statutes and rules it administers to determine his rights should a claim arise. This is expressly permissible under IDAPA. *See* I.C. § 67-5232(1) ("Any person may petition an agency for a declaratory ruling as to the applicability of any statutory provision or of any rule administered by the agency").

Second, PERSI argues that this Court does not need to rule on the PERSI Board's legal determination (i.e. that tax loss damages are not recoverable under the PERSI statutes) because the PERSI Board has already determined Elgee failed to prove his claim as a factual matter. PERSI is mistaken because this determination must be set aside. Elgee did not seek to prove a tax loss on remand and the PERSI Board did not take any evidence on the issue. As such, it was arbitrary and capricious for the PERSI Board to conclude Elgee failed to prove a tax loss. Relatedly, PERSI contends the hearing officer's 2015 finding that Elgee failed to prove a tax loss at that time precludes Elgee from making a similar claim later. This, too, is mistaken because the PERSI Board rejected the hearing officer's finding that Elgee was eligible for benefits, he received no lump sum as a result of the 2015 finding, and the sum he was due continued to grow for years. Thus, if Elgee had sought to prove a tax loss in 2018, that claim would have been distinct from his 2015 claim, and by the time the PERSI Board purported to make a final determination on the matter, the 2015 claim was moot.

Turning now to the proceedings in the second judicial review action, Elgee initially sought a ruling that the PERSI Board erred in its determinations regarding the tax loss issue. However, he later moved for the tax loss claim to be dismissed without prejudice. Ultimately, the district court granted Elgee's motion to dismiss, citing both ripeness and improper forum grounds, without addressing the merits of either of the PERSI Board's determinations on the issue:

> On May 8, 2019, Mr. Elgee filed his Motion for Dismissal of Tax Loss Issue without prejudice. His motion to dismiss the issue without prejudice is GRANTED.

16

The matter is not ripe for adjudication, and judicial review is not the appropriate forum to obtain a money judgment for any such tax loss.

PERSI argues that the district court erred in granting Elgee's motion because dismissing a claim without prejudice is "extraordinary relief not permitted by IDAPA." We agree. Section 67-5279 of IDAPA defines the scope of judicial review of agency action. It provides: "If the agency action is not affirmed, it *shall be set aside*, in whole or in part, and *remanded* for further proceedings as necessary." (Emphasis added). Thus, the district court's options did not include directly dismissing the tax loss claim, either with or without prejudice.

Additionally, the district court's reasons for dismissing the tax loss claim demonstrate its focus was misplaced. In holding Elgee's claim was not ripe for adjudication and that it could not award money damages on judicial review, the district court was apparently responding to the PERSI Board's determination that Elgee had not proven his claim as a factual matter. As explained above, this claim was not before the PERSI Board and should not have been decided in the first instance. Instead, the claim actually before the PERSI Board was Elgee's request for a declaratory ruling. Yet the district court did not address the PERSI Board's determination on this matter because it granted Elgee's motion to dismiss his claim. Because this is a question of law reviewed de novo, *see Uhl v. Ballard Med. Prods., Inc.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003), we turn to this question now.

PERSI argues that its determination is correct because the PERSI statutes already provide a remedy in cases of underpayment, namely payment of benefits due plus regular interest. We agree. While this Court exercises free review over an agency's conclusions of law, an agency's interpretation of the statutes it administers is due deference if the agency interpretation is reasonable, consistent with the statutes it administers, and supported by rationales favoring deference. *Sons & Daughters of Idaho, Inc. v. Idaho Lottery Comm'n*, 144 Idaho 23, 26, 156 P.3d 524, 527 (2007). The practicality of an agency's interpretation is one such rationale. *Id.*

Here, PERSI's interpretation of the PERSI statutes is reasonable and it is not in conflict with any express statutory provision. Moreover, we find that deference is appropriate because PERSI's interpretation is practical. Properly establishing tax loss damages would inevitably involve complex proof on matters outside the PERSI Board's usual domain, and would likely require the retention of experts by each side. By contrast, limiting the available remedy to back benefits plus regular interest simply requires the PERSI Board to perform calculations it is accustomed to performing, using information it already has on hand.

17

We note that PERSI's authority to determine its liability for a tax loss claim extends only to its liability under the statutes it administers. Idaho Code section 59-1305(1) describes general duties of the Board and its members; their capacity to sue and be sued; and the conditions under which the Board and its members are entitled to indemnification. Further, section 59-1305(6) includes a non-limitation of remedies clause: "nothing herein contained shall be construed to limit the rights of a member or the board to pursue any other remedy provided by law." Thus, while we express no opinion whether Elgee may maintain a claim under any other source of law, we note the PERSI Board's determination that it is not liable for a tax loss extends only to its liability under the PERSI statutes and no further.

## IV.    CONCLUSION

The decision of the district court is affirmed as to the applicable rate of interest, reversed as to the remaining issues, and remanded for entry of judgment consistent with this opinion. On remand the district court is directed to enter judgment as follows: (1) the PERSI Board's determination that Elgee is due interest at the regular rate of interest under the PERSI statutes is affirmed; (2) the PERSI Board's determination that Elgee is due interest from 2013, rather than 2010, is set aside; (3) the PERSI Board's determination that Elgee is due benefits under the contingent annuitant option, rather than the regular retirement option is affirmed; (4) the PERSI Board's determination that Elgee failed to prove his tax loss claim in 2018 is set aside; and (5) the PERSI Board's determination that tax loss damages are not available under the PERSI statutes is affirmed. Given the mixed results in this case, each party shall bear its own costs under Idaho Appellate Rule 40.

Chief Justice BEVAN, Justices BURDICK and MOELLER, and Justice Pro Tem BASKIN CONCUR.